(May 28, 1992)

■ SARAH TUOHEY, Appellant, v GAINSBOROUGH STUDIOS, INC., Respondent, et al., Defendants. (And Third- and Fourth-Party Actions.)—Order, Supreme Court, New York County (William J. Davis, J.), entered August 24, 1990, which, *inter alia,* granted the motion of defendant Gainsborough Studios, Inc., for summary judgment dismissing the complaint, cross-claims and counterclaims against it, modified, on the law, to reverse that portion of the order which granted Gainsborough summary judgment on plaintiff's cause of action under Labor Law § 241 (6), and to deny the motion as to that cause of action and the cross-claims and counterclaims, and otherwise affirmed, without costs.

Plaintiff's decedent, a construction worker employed by third-party defendant Collyer Associates, was electrocuted when he turned on an electric chipping hammer while he was working on the facade of a building owned by defendant and third-party plaintiff, Gainsborough Studios, Inc. The only issue on this appeal involves the potential liability of Gainsborough for decedent's death under Labor Law § 240 (1) and § 241 (6).

The evidence presented on Gainsborough's motion for summary judgment dismissing the complaint against it shows that the aluminum scaffold upon which the decedent was working was located at the 17th floor, approximately 50 feet from the roof of the building. Although the scaffold was equipped with an electrical outlet for the purpose of connecting hand tools, that outlet had been out of service for four or five weeks. Consequently, the electrical tools used by decedent and his co-worker were connected to a series of three or four extension cords plugged into an outlet on the roof. Decedent had been using, without incident, a small electric chipping hammer, but the work required a more powerful piece of equipment, and a larger hammer was brought from another construction site. When decedent turned on the larger hammer, he was electrocuted. According to plaintiff's expert, decedent would not have been electrocuted if the hammer had been properly grounded, or if the aluminum scaffold had been insulated. Neither the chipping hammer nor the extension cords were preserved, and they were therefore unavailable for examination.

We agree with the IAS court that Labor Law § 240 (1), sometimes referred to as the "Scaffolding Law", is inapplicable to the case at bar. That statute provides, as here pertinent, that "[a]ll contractors and owners and their agents * * * in the erection, demolition, repairing, altering * * * of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders * * * so constructed, placed and operated as to give proper protection to a person so employed." In *Rocovich v Consolidated Edison Co.* (78 NY2d 509, 514), the Court of Appeals held that under this statute, "[t]he contemplated hazards are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured." Since the hazard in the within case, electrocution, is unrelated to the elevation of the scaf-

folding, Gainsborough cannot be held liable under Labor Law § 240 (1).

However, we find that plaintiff has made a sufficient showing to withstand defendant's motion for summary judgment as to plaintiff's claim under Labor Law § 241 (6). This section provides that contractors and owners must assure that: "All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work * * * shall comply therewith."* Unlike section 240 (1), this section does not impose absolute liability for any injury arising from its breach, but rather requires a determination as to whether the safety measures employed were " ' "reasonable and adequate" ' " under the circumstances (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 523, *rearg denied* 65 NY2d 1054).

The IAS court erroneously concluded that Gainsborough could not be held liable for decedent's death by electrocution, reasoning that "a duty to provide a safe place to work is not breached when the injury arises out of a defect in the subcontractor's own plant, tools and methods [but] an owner may be responsible if there is supervisory control over the safety of the machinery or methods, or if there is actual or constructive notice of defect." The IAS court cited as authorities for those principles *Nagel v Metzger* (103 AD2d 1, 8-9) and *Dube v Kaufman* (145 AD2d 595). However, in setting forth the aforesaid principles relating to notice and supervisory control, both of those cases were addressing an owner's liability under Labor Law § 200, *not* section 241 (6).

Gainsborough denied that it had actual or constructive notice of the defect, and plaintiff introduced no evidence to the contrary. However, Labor Law § 241 (6) imposes a *nondelegable* duty upon owners to provide reasonable and adequate protection to workers, making them liable for damages even in the absence of a showing that they controlled, directed or

---

* One such rule (12 NYCRR 23-1.10 [b] [3]) which plaintiff's expert contends was not complied with, provides: "*Grounding of electrical tools.* Electrically operated hand tools shall be grounded during use. The ground wires shall be connected to the frames of the tools and the other ends shall be properly grounded. Approved double-insulated type portable hand tools are exempt from this grounding requirement.

supervised the work site *(Long v Forest-Fehlhaber,* 55 NY2d 154, 159). The owner "is the party who, as a practical matter, has the right to hire or fire [contractors and] subcontractors and to insist that proper safety practices are followed. It is the right to control the work that is significant, not the actual exercise or nonexercise of control [citation omitted]." *(Nagel v Metzger,* 103 AD2d, *supra,* at 7.)

It is significant that Gainsborough has not denied that Collyer, the contractor and decedent's employer, was legally responsible for the safety defects that caused the electrocution, and in fact Gainsborough seeks to place sole responsibility for the incident on Collyer. Since the nondelegable duty imposed on Gainsborough by Labor Law § 241 (6) renders it *vicariously* liable for the negligence of Collyer *(Nagel v Metzger,* 103 AD2d, *supra,* at 7; *Monroe v City of New York,* 67 AD2d 89, 104), summary judgment should not have been granted to Gainsborough dismissing plaintiff's claim based upon that statute.

Addressing briefly the reasoning of the dissent, *Long v Forest-Fehlhaber* (55 NY2d 154, *supra)* only held that contributory (now comparative) negligence of the plaintiff may be raised by the owner or contractor as a defense in an action brought under Labor Law § 241 (6). By no stretch of interpretation can that case support the dissenter's conclusion that an owner, who usually is absent from the construction site, must have actual or constructive notice of a violation of safety standards relating to scaffolding or the grounding of particular tools. Were such the case, it would be virtually impossible to hold an owner liable for a construction injury, and the statute would fail in its central purpose, which is to place " 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor' " *(Zimmer v Chemung County Performing Arts,* 65 NY2d, *supra,* at 520, quoting 1969 NY Legis Ann, at 407). Moreover, since Labor Law § 241 (6) holds owners and contractors liable for such injuries " 'absent a showing that they controlled, directed or supervised the work site' " *(Long v Forest-Fehlhaber,* 55 NY2d, *supra,* at 159), it is difficult to fathom the dissenter's conclusion that an owner of a building must nevertheless be shown to have had actual or constructive notice of a safety defect in order to be held liable for an injury to a worker resulting from such defect. Concur—Carro, Ellerin, Kassal and Smith, JJ.

Murphy, P. J., dissents in a memorandum as follows: I agree with the majority that the Court of Appeals in *Rocovich*

*v Consolidated Edison Co.* (78 NY2d 509) resolved the liability issue in this action as it relates to Labor Law § 240 (1), but I disagree with their application of Labor Law § 241 (6).

Labor Law § 241 (6) requires a determination of whether the safety measures employed on a job site were reasonable and adequate and whether a violation was a proximate cause of plaintiff's injuries *(see, Zimmer v Chemung County Performing Arts,* 65 NY2d 513, *rearg denied* 65 NY2d 1054). Defendant Gainsborough may not delegate the duty provided by the statute; however, as an owner it is not "precluded * * * from raising any defense to the imposition of liability" *(supra,* at 521-522). Both Labor Law § 241 (6) and § 200 have been interpreted as being a reiteration of common-law negligence standards *(supra)* which require that a party to be charged with liability must have notice, actual or constructive, of the unsafe condition and exercise sufficient control of the work being performed to correct or avoid the unsafe condition. Gainsborough contends that it had no actual or constructive notice of any safety defects as involved this plaintiff's claim. The plaintiff does not contend there was any notice and the majority writing agrees. The Court of Appeals in *Long v Forest-Fehlhaber* (55 NY2d 154, 160) stated that Labor Law § 241 (6) is, "like subdivision 1 of section 200 of the Labor Law, but a reiteration of common-law standards". It follows then that an owner in control of a work site must still have notice of the unsafe conditions as a prerequisite to the finding of common-law liability. And since, concededly, that necessary element of proof, i.e., notice, is lacking, said defendant cannot be held liable for the decedent's electrocution.

Further, this record is clear that Gainsborough had no knowledge of the drill brought to the work site by the subcontractor and that the plaintiff has been unable to demonstrate that the electrocution occurred due to improper grounding, vis-à-vis the aluminum scaffolding, or that the outlets on the scaffolding were involved or that improper grounding contributed to the cause of the accident. It further appears that plaintiff's expert never inspected the drill, scaffolding or electrical wiring. Nor was there any proof that the scaffolding was not properly grounded.

To find liability or defeat summary judgment there must be some showing of negligence. Here there was a failure of proof. Accordingly, the decision of the IAS court should be affirmed.