OPINION OF THE COURT
David Goldstein, J.
ISSUE
The case raises a novel issue, of apparent first impression, concerning the extent of the owner’s liability and duty under Labor Law § 241 (6), where, as here, the work which resulted in the injury was performed by one who was not only not authorized to do the work, but was specifically instructed not to do it and where the act was attempted prior to when it was to have been performed by another contractor, who had been retained for that purpose.
*1006 FACTS
The action was brought to recover for personal injuries sustained by plaintiff, who, on August 29, 1988, was acting with four others in attempting to remove a glass panel from the storefront of premises at 31-17 Steinway Street, a two-story building.
It is alleged that plaintiff was an employee of the contractor, Surujbally Singh, also known as Suresh, who had been originally named as a defendant, but whose whereabouts are now unknown. After plaintiff had discontinued as against that party, Mr. Justice Lane permitted Suresh’s attorneys to withdraw, preserving the cross claims, which were continued as third-party claims. These had been interposed by the owner (Stam Realty) and the tenant (Mid-Island Retail, Inc., doing business as Benetton), the only defendants who remained at the time of the trial.
The storefront property was leased by Stam Realty to Mid-Island by a lease entered into on August 24, 1988, which gave permission to the tenant to make renovations, at its expense. According to Siam’s partner, Harriet Fortgang, the owner had general knowledge that there were to be renovations — she knew what Benetton stores looked like, but Stam left to the tenant the nature and extent of any remodeling work to be done. Nor did the owner assign anyone to inspect the work as it progressed.
Mid-Island, the tenant, through its president, John Khezri, testified as to the construction work which was to take place, which included installation of new interior walls and ceiling; removal of an existing stairway, which was to be moved and the hole in the ceiling closed; and replacement of the storefront, i.e., replacing the glass display windows, which were mounted on three feet of cement, extending up from the sidewalk, with an all glass front. According to Khezri, Suresh was told not to take out the storefront windows. This was to be done by ARP, another contractor, who was to remove the old storefront and construct a new one after Suresh had cleaned up the store. Suresh was to gut the first floor — to remove the interior walls and ceiling (tear down the sheetrock), remove the debris and do the construction on the second floor, i.e., sheetrock the offices. Although Khezri visited the store every other day, he gave no directions or instructions as to the work and went only to see if work was in progress — to see if the work was being done. When he arrived after the accident, he asked Suresh why he was removing the glass front, when that was to be *1007 done by another company, ARP, who was to do the replacement as well. Undisputed is that this was to take place in mid-September 1988, more than two weeks after Suresh undertook, for whatever reason, and apparently without any authority, to remove the glass storefront, an act whmh led to plaintiff’s injury.
Plaintiff testified that he was employed by Suresh and had previously done demolition, painting and repair work, but had not previously done any glass removal. The date of the accident, August 29, 1988, was his first day on the job. He was instructed to take down the ceiling and walls and, for that purpose, used a hammer, a chisel and a crowbar. Suresh, who had left during the day, returned at about 4:45 p.m. He brought a bottle of whiskey with him and gave each worker a cup with a drink, after which he told plaintiff and the others to take down the glass front to the store. After Suresh had used a screwdriver to take off the screws around the frame, he directed three men to the outside and two to the inside to attempt to loosen and remove the glass front. No tools or devices were used and, as a result of the process, there developed an eight-inch crack, which led to a two-foot piece of glass falling and striking plaintiff.
LABOR LAW § 241 (6)
(1) Legal Contentions
Liability as against the owner, Stam Realty, is predicated solely upon Labor Law § 241 (6), which, insofar as applicable here, imposes upon the owner a duty "to provide reasonable and adequate protection and safety” for workers and to comply with specific safety rules and regulations promulgated by the Commissioner of the Department of Labor. As argued by plaintiff, the statute imposes a nondelegable duty upon the owner, which applies regardless of considerations of notice or knowledge.
In terms of the obligations statutorily imposed by Labor Law § 241 (6), it has been recognized that the statute is "a hybrid, since it reiterates the general common-law standard of care and then contemplates the establishment of specific detailed rules through the Labor Commissioner’s rule-making authority” (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 503). In Ross, the Court of Appeals, in adherence with prior determinations, held that a plaintiff may not rely solely upon the "broad, nonspecific regulatory standard” contained in sec *1008 tion 241 (6) {supra, at 504), but instead, must rely upon the violation of a specific administrative rule, i.e., a corresponding Industrial Code violation which mandates compliance with "concrete specifications”, and not one which merely establishes "general safety standards” (supra, at 505).
In this case, plaintiff places sole reliance upon Industrial Code (12 NYCRR) § 23-3.3 (c), which provides as follows: "(c) Inspection. During hand demolition operations, continuing inspections shall be made by designated persons as the work progresses to detect any hazards to any person resulting from weakened or deteriorated floors or walls or from loosened material. Persons shall not be suffered or permitted to work where such hazards exist until protection has been provided by shoring, bracing or other effective means.”
(2) Demolition Work
Industrial Code § 23-1.4 (b) (16) defines "[djemolition work” as, "The work incidental to or associated with the total or partial dismantling or razing of a building or other structure including the removing or dismantling of machinery or other equipment.” Notwithstanding the definition, it is noted that section 23-3.3 (c) refers only to demolition, not "demolition work”. It is upon that basis that defendant argues that the removal of the glass storefront, even if it is deemed to constitute "demolition work”, was not "demolition”, within the terms of section 23-3.3 (c) and, therefore, cannot form the basis or predicate for liability under Labor Law § 241 (6). The owner contends that "demolition”, as used in section 23-3.3 (c), contemplates only demolition of a building itself, not the partial demolition envisioned by the definition of "demolition work” in section 23-1.4 (b) (16).
To the contrary, the applicable cases which have considered the appropriate construction of the Labor Law have recognized that the definitions in the Industrial Code may be relied upon to interpret the language and operative standard in Labor Law § 241 (6) (see, Lozo v Crown Zellerbach Corp., 142 AD2d 949; see also, Ruiz v 8600 Roll Rd., 190 AD2d 1030). While no decision has been cited or found relating to the issue, there is no basis for the restrictive approach and interpretation advocated by the owner in this case.
In my view, the more reasonable and rational construction, bearing in mind the underlying purpose to be accomplished and the intended scope of the statute, is to hold that the term "demolition” in section 23-3.3 (c), includes within *1009 its protective sphere the definition of "demolition work” contained in section 23-1.4 (b) (16), i.e., work incidental to or associated with the total or partial dismantling or razing of a building or other structure. Such a construction is more in line with the liberal interpretation to be accorded the statute to accomplish the purposes which underlie the Labor Law.
Upon this basis, the removal of the storefront in this case, consisting of a glass front window, mounted on a cement base, extending about three feet up from the sidewalk, was a "partial dismantling” which, without more, would impose the type of inspection obligation directed by Industrial Code § 23-3.3 (c).
(3) General Safety Standard vs. Specific Safety Regulation
Nor do I agree with defendant that Industrial Code § 23-3.3 (c) establishes only a general standard which, under Ross v Curtis-Palmer Hydro-Elec. Co. (supra) and other cases, is insufficient as a predicate for liability under Labor Law § 241 (6). Liability under section 241 (6) contemplates and requires a claim of a violation of a specific safety regulation promulgated by the Commissioner of the Department of Labor. The violation must be of "concrete specifications”, not "those that establish general safety standards” (Ross v Curtis-Palmer HydroElec. Co., supra, at 505). As was held in Ross (supra) it is the former which gives rise to a nondelegable duty, the latter does not (see also, Vernieri v Empire Realty Co., 219 AD2d 593; Zacher v Niagara Frontier Servs., 210 AD2d 897; Foster v Spevack, 198 AD2d 892; Filipowski v New York State Thruway Auth., NYLJ, July 18, 1996, at 24, col 1; Young v Fordham Univ., NYLJ, May 20, 1996, at 28, col 4).
As applied here, the Industrial Code provision (§ 23-3.3 [c]), which mandates "continuing inspections * * * made by designated persons as the work progresses to detect any hazards to any person resulting from * * * loosened material”, is, within the standard expressed in Ross (supra) a specific safety regulation — "a concrete specification” — in contrast to a general safety standard. It directs those subject to its protective scope to take definitive, affirmative action. Plainly, it does far more than impose a general, nonspecific regulatory or safety standard, which the Court in Ross held would not support an action against a nonsupervising owner or contractor, under Labor Law § 241 (6) (Ross v Curtis-Palmer Hydro-Elec. Co., supra, at 504).
*1010 (4) Demolition Operations
Notwithstanding the foregoing, the Industrial Code provision, by its very terms, applies only "[d]uring hand demolition operations” (12 NYCRR 23-3.3 [c]). The critical issue posed on this record is whether there was any proof adduced that there were such demolition operations, sufficient to require submission to the jury as trier of the facts or, stated otherwise, was there a failure of proof on the part of the plaintiff which mandates dismissal of the complaint on that ground.
Contrary to plaintiffs contention, the work which Suresh had concededly been retained to do, namely, to gut the first floor — to take down the sheetrock or plaster walls and ceiling, remove or move the stairway, and construct new sheetrock for offices on the second floor — was neither total nor partial demolition of a building, within the definition of "demolition work” in section 23-1.4 (b) (16) of the Industrial Code. While it may be considered renovation, alteration or construction, it does not amount to demolition, within the protective scope of Industrial Code § 23-3.3 (c).
The appropriate construction to be accorded the Industrial Code and, in turn, the operative scope of Labor Law § 241 (6), is a question of law for the court. The Appellate Division, Second Department, has recognized that there is a clear difference between renovation on the one hand and construction, demolition and excavation on the other hand (see, DeTommaso v Fitzgerald Constr. Corp,, 138 AD2d 341, 343; Keefner v City of Albany, 77 AD2d 747, lv denied 52 NY2d 704). Demolition, consistent with the Industrial Code definition, necessitates the total or partial dismantling or razing of a building or structure. Surely, this anticipates more than mere painting, plastering or removal and installation of new sheetrock. What the rule envisions is some structural change of the building, in whole or in part, i.e., some interference with, alteration or change in the structural integrity of the building, sufficient to constitute a dismantling or razing of the building, either in whole or in part.
As a matter of law, while the removal of the storefront — the glass display and cement wall upon which it rested — did amount to a partial demolition or dismantling of the building, there is lacking on this record facts critical to plaintiffs prima facie case, namely, any evidence or proof that Suresh acted with some measure or degree of authority in terms of any partial demolition. Plaintiff contends that, once Suresh proceeded to demolish the front of the store, his action *1011 automatically imposed upon the owner a nondelegable duty as a matter of law. In my view, the position assumed by plaintiff in this case unreasonably extends the protection to be accorded by Labor Law § 241 (6), beyond any rational basis. It would render the owner the equivalent of an insurer, responsible in a host of cases well beyond the liability to be imposed by the statute (Labor Law § 241 [6]).
In this case, the proof is undisputed that another contractor, ARP, was retained by the tenant to remove the existing storefront and glass and to construct a new front and entrance to the store, and that this was to be done in mid-September 1988, not in August. The only evidence adduced was that Suresh was instructed to gut the first floor — to remove the sheetrock or plaster on the walls and ceiling, move the stairway and clean up the debris — and was specifically instructed not to take out the storefront. The tenant’s president testified, without contradiction, that ARP was to remove the front of the store and to construct a new front after Suresh had cleaned up the store. Under the circumstances, at the time Suresh proceeded as he did, he acted well beyond his authority. The record and proof adduced at trial will support no other conclusion.
It is undisputed that the underlying purpose of the Labor Law was to place responsibility for safety practices upon the owner and general contractor, where it rightfully belongs. As a consequence of that general objective, Labor Law § 241 (6) imposes a nondelegable duty upon the owner and contractor, irrespective of their control or supervision of the construction site (Allen v Cloutier Constr. Corp., 44 NY2d 290, 300; see also, Long v Forest-Fehlhaber, 55 NY2d 154, 159; Tuohey v Gainsborough Studios, 183 AD2d 636) and, regardless of any considerations of whether the owner had inspected the premises or whether it had notice or actual knowledge of any defect (Guzman v Haven Plaza Hous. Dev. Fund Co., 69 NY2d 559, 565-566).
These principles, however, do not operate to cast the owner in the position of an insurer for all events and all injuries. The mere happening of an accident does not impose liability. It is still necessary to establish the necessary factual predicate or basis to impose responsibility.
Insofar as applicable here, there was no proof adduced that, on August 29, 1988, hand demolition operations were taking place, with authorization from the appropriate party, in this case, the tenant, who had the owner’s permission to alter or *1012 renovate the store. In fact, the uncontested proof at trial is to the contrary, that such partial demolition, consisting of the removal of the storefront and its replacement, was not to take place until weeks later, in mid-September 1988, and was to be done by another contractor, who was hired for that express purpose. The underlying reason why Suresh took it upon himself to proceed with the removal of the storefront, does not appear on this record. Whether he'had some ulterior motive or whether his purpose was to compel payment of additional compensation for such work has not been disclosed.
In any event, as a matter of law, Suresh’s unilateral action cannot and should not result in increased or additional liability upon the owner, beyond the protective scope of the statute. As noted, to hold otherwise would be in conflict with the underlying legislative purpose, would extend the scope of the statute beyond the protection intended by the Legislature, and would impose upon the owner liability of one in the position of an insurer.
Labor Law § 241 (6), albeit "absolute”, does and should have certain limitations. While the protective scope of the statue is broad, necessary in terms of its remedial nature, it is not without some boundaries. Thus, hypothetically, suppose for example, an interloper, with no relationship to any construction work — some third party — decided to appropriate for himself the glass storefront and, for that purpose, assume further that he prevailed upon the plaintiff and others to assist in its removal, either at night or on some date when construction was not proceeding. Assuming that the same series of events as in the case at bar led to the dislodging of a piece of glass, which fell and injured plaintiff, could anyone rationally or logically contend that the language or spirit of section 241 (6) should cast responsibility upon the owner? Naturally, one could argue that the lack of any relationship of the third party to the construction is a distinguishing feature, since such an event was beyond the expectation or contemplation of the owner. However, neither such considerations nor the owner’s control over, presence at or participation in the construction are relevant in terms of liability under section 241 (6).
Were we to alter the hypothetical to substitute, in place of the interloper, a contractor who had been hired to perform a specific task, unrelated to the glass front, but who decided to appropriate the glass for himself, should liability attach to the owner under Labor Law § 241 (6)? Surely, the remedial purpose and protective scope are not served by holding the owner ac *1013 countable in such case. Suppose, for example, a contractor had been retained to paint the inside of the store, or even just to sweep up, and was instructed to do no other work. Assume further that the contractor decided, on his own, to remove the glass front to the store, either to appropriate it to himself or to extract additional monies from the owner, aware at the time that the owner had already hired another contractor to replace the glass front the following month. Under such facts, should absolute liability be imposed upon the owner under Labor Law § 241 (6)? I think not. In my view, this would unreasonably extend the protection of the statute beyond its stated or intended purpose. It would place the owner in the position of an insurer, responsible for any injury occasioned to one on the property, whether or not there was authorized demolition work under way.
While one could argue as to the salutary benefit of such a direction, that is more appropriately and properly a matter reserved for the Legislature. Insofar as applicable to our case, the statute (Labor Law § 241 [6]) and the Industrial Code provision (§ 23-3.3[c]), the sole predicates for liability, are limited in that they apply only "[d]uring hand demolition operations”. In both our case and the hypotheticals there was no authorized or proper demolition work under way, the owner or tenant having already arranged for such partial demolition to be done in the future by another contractor, expressly retained for that purpose. Moreover, the contractor, whose own negligence or stupidity allegedly caused the injury, was specifically instructed not to demolish the storefront and not to remove the glass. The reason for his flagrant disregard of those directions has not been disclosed, but is without dispositive effect in any event.
On this record, plaintiff has not established that the accident resulted from the conduct of hand demolition operations or work within the contemplated scope of the statute and the Industrial Code provision. In fact, according every favorable inference to plaintiff’s proof, the evidence at trial established the contrary, that there was to be no demolition work or operation until mid-September 1988, some two weeks after the accident. Thus, the factual predicate for liability under the statute has not been satisfied.
It is undisputed that the incident here resulted from the unauthorized action on the part of Suresh, improperly undertaken to remove the glass front to the store. In my view, applying the unique factual situation presented in this case, there was no duty upon the owner to protect or safeguard against *1014 such eventuality. Plainly, this is beyond the protection to be accorded by the statute. Inasmuch as there was a failure of proof on plaintiffs part to establish the requisite factual predicate for liability under Labor Law § 241 (6), via the Industrial Code provision in section 23-3.3 (c), the complaint must be dismissed upon that ground. By no rational process could the jury, as trier of the facts, conclude in this case that there had been a violation of Labor Law § 241 (6). As noted, this follows from the absence of any proof to establish the basis for liability under Industrial Code § 23-3.3 (c), namely, the conduct of hand demolition work or operations at the time of the occurrence.
Rapp v Zandri Constr. Corp. (165 AD2d 639), relied upon by plaintiff, is inapposite. In that case, plaintiff, a carpenter’s helper, was injured when a co-worker discharged a pneumatic staple gun, sending a staple into plaintiffs eye. In terms of liability as against the owner and contractor under Labor Law § 241 (6), the Appellate Division, Third Department, agreed that, notwithstanding the absence of any control or supervision of the work site, there was a triable issue whether the owner and contractor had provided reasonable protection to those involved in construction, excavation or demolition, an issue which flowed from the nondelegable duty imposed by the statute. Plainly, the decision, which disposed of a motion for summary judgment, has no bearing upon the issue here. In our case, at issue is a different Industrial Code provision and the failure to adduce at trial critical proof as to its applicability. The prime issue in our case is not the effect of the absence of control or supervision of the work area, nor the inadequacy of notice. Rather, it is the legal effect of the occurrence of an injury under circumstances which, factually, do not impose a statutory duty upon the owner. Thus, upon that ground, there is an insufficient basis to impose liability in this case.
Accordingly, at the close of plaintiffs case, upon the failure to establish a prima facie case, defendant’s motion to dismiss is granted in all respects and the complaint is dismissed.