639 S.E.2d 756

**Joseph E. RYAN, Plaintiff Below, Appellant,**

v.

**CLONCH INDUSTRIES, INC., A West Virginia Corporation; and H & D Lumber Distributor, Inc., A West Virginia Corporation, Defendants Below, Appellees.**

No. 33001.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 19, 2006.

Decided: Oct. 27, 2006.

Dissenting Opinion of Justice Benjamin Dec. 15, 2006.

Marvin W. Masters, Andrew K. Chafin, The Masters Law Firm, L.C., Charleston, for the Appellant.

Robert A. Lockhart, Schuda & Associates, P.L.L.C., Charleston, for the Appellee.

DAVIS, Chief Justice.

Joseph E. Ryan, plaintiff below/appellant (hereinafter referred to as "Mr. Ryan"), appeals summary judgment granted in favor of his employer, Clonch Industries, Inc. and H & D Lumber Distributors, Inc., defendants below/appellees (hereinafter collectively referred to as "Clonch"),[1] in a deliberate intent action brought under W. Va.Code § 23–4–2(c)(2)(ii) (1994) (Repl.Vol.1998).[2] In granting summary judgment, the circuit court of Nicholas County concluded that Mr. Ryan had failed to establish a genuine issue of material fact as to (1) whether Clonch had a subjective realization and appreciation of the existence of a specific unsafe working condition, or a high degree of risk and strong probability of serious injury or death presented by the specific unsafe working condition, and (2) whether there was a specific safety statute violated. We find that Mr. Ryan has met his burden on these two issues and therefore reverse the summary judgment order and remand this case for further proceedings.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Although there are many contentions between the parties with respect to what may be gleaned from the evidence in the record, there are a few undisputed facts. Basically, Mr. Ryan was hired by Clonch on August 19, 2002. Clonch is in the lumbering business, and Mr. Ryan was originally hired to perform the job of stacker. Mr. Ryan asserts that prior to this employment, he had never before worked in or around a sawmill or lumberyard. After three weeks of employment, Mr. Ryan was offered a position as a banding man. The job duties of a banding

1. According to Mr. Ryan, H & D Lumber Distributor, Inc. is wholly owned by Clonch Industries, Inc., and both companies are engaged in the sawmilling business. H & D explains that the two companies share officers, directors and offices, and that H & D Lumber Distributor, Inc., is essentially a payroll account pursuant to which the employees, other than those working at Clonch Industries' sawmill, are paid.

2. This statute has been amended; however, we apply the law in existence at the time of the injury. See Kane v. Corning Glass Works, 175 W.Va. 77, 78 n. 1, 331 S.E.2d 807, 808 n. 1 (1984) ("The above-cited statute was in effect at the time of the plaintiff's injury and, therefore, it governs this [deliberate intent] case." (citations omitted)); Cline v. Joy Mfg. Co., 172 W.Va. 769, 771 n. 4, 310 S.E.2d 835, 837 n. 4 (1983) ("The above-cited statute was in effect at the time of the plaintiff's injury and so it controls this [deliberate intent] case." (citation omitted)). The elements required to prevail in a claim for deliberate intent under the theory asserted by Mr. Ryan may now be found at W. Va.Code § 23–4–2(d)(2)(ii) (2005) (Repl.Vol.2005).

man included cutting measured lengths of metal banding from a coil using tin snips provided by Clonch, placing the bands around pallets of lumber, tightening the bands and crimping the ends together. While Mr. Ryan was cutting metal banding on September 17, 2002, his third day of performing the job of banding man, he was struck in the left eye by a sharp piece of the metal banding material, which caused a deep laceration. Mr. Ryan has undergone five surgeries on his injured eye. It has been determined that he has been rendered permanently blind in that eye.

Thereafter, Mr. Ryan filed a deliberate intent claim against Clonch under W. Va. Code § 23–4–2(c)(2)(ii). Prior to trial, by order entered April 21, 2005, the Circuit Court of Nicholas County granted summary judgment in favor of Clonch based upon its conclusion that Mr. Ryan had failed to establish two of the five elements of W. Va.Code § 23–4–2(c)(2)(ii). Specifically, the circuit court concluded that Mr. Ryan failed to establish a genuine issue of material fact as to (1) whether Clonch had a subjective realization and appreciation of the existence of a specific unsafe working condition, or a high degree of risk and strong probability of serious injury or death presented by the specific unsafe working condition, and (2) whether there was a specific safety statute, rule or regulation violated. It is from the circuit court's summary judgment order that Mr. Ryan now appeals.

## II.

### STANDARD OF REVIEW

■ The instant case is before this Court on appeal of an order of the circuit court granting summary judgment in favor of Clonch. Accordingly, our review of this case is de novo. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo.*"). In performing our plenary review, we are mindful that

" '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*. Finally, we note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*.

## III.

### DISCUSSION

■ To overcome the immunity afforded Clonch under the West Virginia workers' compensation system and establish deliberate intent under the theory propounded by Mr. Ryan, he is required to establish each of the elements set out in W. Va.Code § 23–4–2(c)(2)(ii).[3] This Court acknowledged the same when it held that " '[a] plaintiff may establish "deliberate intention" in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in W. Va.

---

3. "The statute creating a legislative standard for loss of employer immunity from civil liability for work-related injury to employees found in W. Va.Code § 23–4–2 (1983) essentially sets forth two separate and distinct methods of proving 'deliberate intention.' " Syl. pt. 1, *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990). As noted, Mr. Ryan has asserted his claim against Clonch under W. Va.Code § 23–4–2(c)(2)(ii). A deliberate intent cause of action may also be brought under W. Va.Code § 23–4–2(c)(2)(i), where

[i]t is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately

formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes *negligence, no matter how gross or aggravated;* or (C) willful, wanton or reckless misconduct[.]

The foregoing provision has been amended and can now be found at W. Va.Code § 23–4–2(d)(2)(i) (2005) (Repl.Vol.2005). Mr. Ryan has not asserted a claim under W. Va.Code § 23–4–2(c)(2)(i).

Code, § 23–4–2(c)(2)(ii) (1983).' Syl. pt. 2, *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990)." Syl. pt. 1, *Bell v. Vecellio & Grogan, Inc.*, 191 W.Va. 577, 447 S.E.2d 269 (1994). The aforementioned statutory provision states that

(2) The immunity from suit provided under this section and under section six-a, [§ 23–2–6a] article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:

. . . .

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition in-

volved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

W. Va.Code § 23–4–2(c)(2)(ii).

Because the circuit court based its summary judgment ruling on its determination that Mr. Ryan failed to establish elements (B) and (C) above,[4] our discussion will be limited to those two criteria.[5] We will first discuss subsection (C).

### A. Violation of Safety Statute, Rule, Regulation or Industry Standard

In order to overcome Clonch's motion for summary judgment as to W. Va.Code § 23–4–2(c)(2)(ii)(C), Mr. Ryan was required to establish a question of fact existed with respect to whether the specific unsafe working condition of which he complained

was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation

---

**4.** *See* W. Va.Code § 23–4–2(c)(2)(iii)(B) ("Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to Rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist . . . ."). With respect to this provision, we have held that

The portion of the statute which authorizes "prompt judicial resolution" of "deliberate in-

tention" actions against employers, specifically, *W. Va.Code*, 23–4–2(c)(2)(iii)(B) [1983, 1991], relates to plaintiffs' more specific substantive law burden under the five-element test of *W. Va.Code*, 23–4–2(c)(2)(ii)(A)–(E) [1983, 1991], but the preexisting procedural law still applies for granting employers' motions for summary judgment, directed verdict and judgment notwithstanding the verdict.

Syl. pt. 3, *Sias v. W–P Coal Co.*, 185 W.Va. 569, 408 S.E.2d 321 (1991).

**5.** No issues involving the remaining elements of W. Va.Code § 23–4–2(c)(2)(ii), namely subsections (A), (D) and (E), are presently before this Court.

or standard generally requiring safe workplaces, equipment or working conditions.

In granting summary judgment to Clonch in the instant case, the circuit court found that "[t]he safety regulations cited by [Mr. Ryan] regarding the use of safety glasses and a hazard assessment are general regulations that do not apply specifically to the cutting of bands." Accordingly, the circuit court concluded that Mr. Ryan had failed to establish "the violation of a safety statute, rule, regulation, or industry standard specifically applicable to the band cutting process." We disagree with the circuit court's conclusion that Mr. Ryan failed to submit evidence that Clonch had violated a regulation specifically applicable to the band cutting process.

■ Mr. Ryan has provided expert testimony that Clonch violated several regulations; however we will focus our attention only on a regulation of the Occupational Safety and Health Administration . (hereinafter referred to as "OSHA"), found at 29 C.F.R. § 1910.132(d)(1) (2006),[6] which required Clonch to conduct a hazard assessment "to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE)." This regulation further directs that "[i]f such hazards are present, the employer shall: ... (i) Select, and have each affected employee use, the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment[.]" 29 C.F.R. § 1910.132(d)(1).

Clonch has conceded that it failed to perform the hazard evaluation mandated by 29 C.F.R. § 1910.132(d)(1),[7] and that it did not require Mr. Ryan to wear safety goggles or any other personal protective equipment.[8] Clonch argues, however, that this regulation is merely a regulation "generally requiring safe workplaces, equipment or working conditions." W. Va.Code § 23–4–2(c)(2)(ii)(C). Therefore, Clonch asserts that its violation of this regulation is insufficient to establish the violation of a regulation "specifically applicable to the particular work and working condition [herein] involved." W. Va.Code § 23–4–2(c)(2)(ii)(C). Again, we disagree.

■ W. Va.Code § 23–4–2(c)(2)(ii)(C) expressly states that the type of statute, rule, regulation or standard, the violation of which is adequate to establish this prong of the five part test for this type of deliberate intent action, is a "statute, rule, regulation or standard [that is] specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard *generally requiring safe workplaces, equipment or working conditions.*" (Emphasis added). We find no ambiguity in this language. Thus, we must apply its plain terms.

" 'Where the language of a statute is free from ambiguity, its plain meaning is to

6. 29 C.F.R. § 1910.132(d) was last amended in 1994 and states:

(d) *Hazard assessment and equipment selection.* (1) The employer shall assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE). If such hazards are present, the employer shall:
(i) Select, and have each affected employee use, the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment;
(ii) Communicate selection decisions to each affected employee; and,
(iii) Select PPE that properly fits each affected employee.
NOTE: *Non-mandatory Appendix B* contains an example of procedures that would comply with the requirement for a hazard assessment.
(2) The employer shall verify that the required workplace hazard assessment has been performed through a written certification that identifies the workplace evaluated; the person certifying that the evaluation has been performed; the date(s) of the hazard assessment; and, which identifies the document as a certification of hazard assessment.

7. Lloyd D. Clonch, vice president and secretary of Clonch, and also one of its owners, testified in his deposition that no one employed by Clonch had ever conducted a hazard assessment, and he had no knowledge of anyone being hired to come to the facility to perform such an assessment.

8. Scott Clonch, superintendent of the Clonch Kilns and Kiln yard, which is also known as the "dry side" of the lumber yard and included the banding operation, gave deposition testimony that employees working on the "dry side" of the lumber yard were not required to wear safety goggles or any other type of protective gear. Likewise, C.J. Hicks, who was the yard foreman at the time of Mr. Ryan's injury, testified in his deposition that no one at Clonch was required to wear safety glasses.

be accepted and applied without resort to interpretation.' Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970)." Syllabus Point 4, *Syncor International Corp. v. Palmer*, 208 W.Va. 658, 542 S.E.2d 479 (2001).

Syl. pt. 4, *Charter Communs. VI, PLLC v. Community Antenna Serv., Inc.*, 211 W.Va. 71, 561 S.E.2d 793 (2002).

Contrary to what the circuit court order indicates, the OSHA regulation found at 29 C.F.R. § 1910.132(d)(1) is not rendered a regulation "*generally requiring safe workplaces, equipment or working conditions,*" merely because it does not expressly identify the banding process. W. Va.Code § 23–4–2(c)(2)(ii)(C). A regulation "*generally requiring safe workplaces, equipment or working conditions,*" would merely require safety in a broad sense, without imposing a specific affirmative duty upon an employer.[9] W. Va. Code § 23–4–2(c)(2)(ii)(C). This Court has rejected deliberate intent actions based upon these types of regulations or standards. *See, e.g., Miller v. City Hosp., Inc.*, 197 W.Va. 403, 409, 475 S.E.2d 495, 501 (1996) (rejecting proof of violation "based on the *general knowledge* of the 'cause and effect between high stress and clinical depression and other disorders,'" and commenting that a general allegation is not a "'specific unsafe working condition [which] was a violation of a state or federal safety statute ....'" (footnote omitted) (emphasis added)); *Tolley v. ACF Indus., Inc.*, 212 W.Va. 548, 557, 575 S.E.2d 158, 167 (2002) (per curiam) (commenting, after noting the absence of any regulation requiring an employer to monitor for isocya-

nates, that "[a]rguably, any such duty [to separately monitor for isocyanates] would only arise under a generalized notion of providing a safe workplace and ... a violation of such a general duty does not rise to the level of a 'deliberate intention' action").

By contrast, 29 C.F.R. § 1910.132(d)(1) does not merely require a safe workplace, or safe equipment or working conditions. Instead, it imposes a specific mandatory duty upon employers in the labor industry to assess their workplaces for the purpose of identifying hazards, assessing the need for protective equipment, and, where a need is identified, requiring employees to use the requisite safety equipment.[10] Because 29 C.F.R. § 1910.132(d)(1) prescribes specifically identified duties, as opposed to merely expressing a generalized goal of safety, we conclude that it is not the type of regulation "generally requiring safe workplaces, equipment or working conditions" that is rejected as a foundation for a deliberate intent action under W. Va.Code § 23–4–2(c)(2)(ii)(C). *Cf. Zuniga v. Stam Realty*, 647 N.Y.S.2d 426, 430, 169 Misc.2d 1004, 1009 (1996) (finding, in connection with a labor law case that required violation of a specific administrative rule as opposed to broad regulatory standard, that "the Industrial Code provision ... which mandates 'continuing inspections ... made by designated persons as the work progresses to detect any hazards to any person resulting from ... loosened material,' is ... a specific safety regulation—'a concrete specification'—in contrast to a general safety standard. It directs those subject to its protective scope to take definitive, affirmative

9. An example of such a regulation may be found at 29 C.F.R. § 1903.1 (2006), which is titled "Purpose and scope," and notes that the "Williams–Steiger Occupational Safety and Health Act of 1970 (84 Stat. 1590 *et seq.*, 29 U.S.C. 651 *et seq.*) requires, in part, that every employer covered under the Act furnish to his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to [ ] employees."

10. 29 C.F.R. § 1910.132(d)(1) states, in relevant part, that

[t]he employer *shall* assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE). If such

hazards are present, or likely to be present, the employer *shall:*

(i) Select, and have each affected employee use, the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment....

(Emphasis added). This Court has long recognized that "[i]t is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. pt. 1, *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35 (1997) (internal citation omitted). *See also State v. Allen*, 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999) ("Generally, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary." (citations omitted)).

action. Plainly, it does far more than impose a general, nonspecific regulatory or safety standard .…").

■ This conclusion does not end our analysis, however. Under W. Va.Code § 23–4–2, the specific duty imposed by the statute, rule, regulation or standard must also be "*specifically applicable* to the particular work and working condition involved." W. Va.Code § 23–4–2(c)(2)(ii)(C) (emphasis added). The circuit court's conclusion that 29 C.F.R. § 1910.132(d)(1) is not "specifically applicable" to the banding process because such process is not expressly mentioned therein applies an unreasonably narrow meaning to the phrase "specifically applicable." It is well established that "[g]enerally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959). We interpret W. Va.Code § 23–4–2(c)(2)(ii)(C) as simply requiring that the statute, rule, regulation or standard asserted by an employee be capable of application to the specific type of work at issue. For example, a regulation directed specifically to coal mining could not be used as a basis for establishing a violation by an employer operating exclusively in the lumber industry, while a regulation falling under a more general classification, such as labor, might be applicable to several different industries.

■ Based upon the foregoing discussion, we now hold that the violation of a statute, rule, regulation or standard is a proper foundation for the element of deliberate intent found at W. Va.Code § 23–4–2(c)(2)(ii)(C) (1994) (Repl.Vol.1998), where such statute, rule, regulation or standard imposes a specifically identifiable duty upon an employer, as opposed to merely expressing a generalized goal, and where the statute, rule, regulation or standard asserted by the employee is capable of application to the specific type of work at issue.

Turning to the instant case, 29 C.F.R. § 1910.132(d)(1) is classified as a regulation relating to labor. There is no dispute that the work performed by Mr. Ryan falls into the category of labor. Moreover, insofar as 29 C.F.R. § 1910.132(d)(1) requires, in mandatory terms, that employers "assess the *workplace* to determine if hazards are present," it applies with equal force to the banding operation as it would to any other process that occurred within the employer's workplace. Thus, we conclude, that Clonch's violation of the OSHA regulation found at 29 C.F.R. § 1910.132(d)(1), which required Clonch to conduct a hazard assessment and to require the use of personal protective equipment where hazards were identified by virtue of the assessment, satisfied Mr. Ryan's burden of establishing the violation of a regulation in connection with his deliberate intent action pursuant to W. Va.Code § 23–4–2(c)(2)(ii)(C). Accordingly, we find that the circuit court erred in granting summary judgment in favor of Clonch with respect to its violation of a specific regulation.

### B.  Subjective Realization

In order to overcome summary judgment with regard to subsection (B) of W. Va.Code § 23–4–2(c)(2)(ii), Mr. Ryan was required to establish a question of fact as to whether Clonch "had a subjective realization and an appreciation of the existence of [the] specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition[.]" W. Va. Code § 23–4–2(c)(2)(ii)(B).

■ This Court has previously held that

Given the statutory framework of W. Va.Code §§ 23–4–2(c)(2)(i) and (ii), (1983, 1991) which equates proof of the five requirements listed in W. Va.Code § 23–4–2(c)(2)(ii) with deliberate intention, a plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. *This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious*

*injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.*

Syl. pt. 3, *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991) (emphasis added). While the type of evidence presented to establish the requisite subjective knowledge on the part of the employer often has been presented as evidence of prior similar injuries or of prior complaints to the employer regarding the unsafe working condition, this Court has clarified that

> To establish that an employer has acted with deliberate intention, no higher burden of proof exists beyond those five requirements set forth in *W. Va.Code* § 23-4-2(c)(2)(ii) [1994]. Under the statute, whether an employer has a "subjective realization and appreciation" of an unsafe working condition and its attendant risks, and whether the employer intentionally exposed an employee to the hazards created by the working condition, *requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often reasonably be drawn. Accordingly, while a plaintiff may choose to introduce evidence of prior similar incidents or complaints to circumstantially establish that an employer has acted with deliberate intention, evidence of prior similar incidents or complaints is not mandated by W. Va.Code, 23-4-2(c)(2)(ii) [1994].*

Syl. pt. 2, *Nutter v. Owens–Illinois, Inc.,* 209 W.Va. 608, 550 S.E.2d 398 (2001) (emphasis added). *See also Sias v. W–P Coal Co.,* 185 W.Va. 569, 575, 408 S.E.2d 321, 327 ("Subjective realization, like any state of mind, must be shown usually by circumstantial evidence, from which, ordinarily, conflicting inferences reasonably can be drawn.").

Mr. Ryan contends that all he was required to prove was that Clonch had a subjective realization of the fact that Mr. Ryan was using tin snips to cut metal banding without the use of protective eyewear. We disagree with this proposition as the relevant statute expressly requires Mr. Ryan to establish that Clonch also realized the "high degree of risk and the strong probability of serious injury or death presented by [the]

specific unsafe working condition." W. Va. Code § 23-4-2(c)(2)(ii)(B). Clonch maintains that no evidence was presented to show that it had a subjective realization and appreciation of any specific unsafe working condition regarding the band cutting job or any high degree of risk and strong probability of injury presented thereby. Clonch concedes that there is no dispute that it did not require or instruct Mr. Ryan to wear safety glasses while cutting bands. However, Clonch argues that Mr. Ryan was able to produce no evidence that any Clonch supervisor believed that this was an unsafe working condition that posed a high degree of risk and a strong probability of serious injury.

While we agree with Clonch that Mr. Ryan's evidence with respect to Clonch's actual subjective knowledge of the existence of an unsafe working condition was lacking, we nevertheless find that Mr. Ryan's evidence that Clonch violated its mandatory duty to perform a hazard evaluation pursuant to the OSHA regulation found at 29 C.F.R. § 1910.132(d)(1), along with Clonch's admission of the same, requires greater scrutiny of this issue.

The aforementioned regulation, 29 C.F.R. § 1910.132(d)(1), directs, in relevant part, that

> [t]he employer *shall* assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE). If such hazards are present, or likely to be present, the employer *shall:*
>
> (i) Select, and have each affected employee use, the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment....

(Emphasis added). By utilizing the term "shall," this regulation signals that its terms are mandatory. " 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' " Syl. pt. 1, *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35 (1997) (internal citation omitted).

Had Clonch complied with this mandatory statute, as it was required to do, it would either have had documented evidence to support its claim that the banding operation was not hazardous and required no personal protective equipment, or, in the alternative, it would have discovered any hazards associated with the process and would then have been under a duty to prescribe appropriate protective equipment. Instead, Clonch simply ignored this mandatory duty, and now seeks to avoid liability in a deliberate intent action by claiming a lack of subjective knowledge. We find such conduct unconscionable.

Our role when addressing statutory provisions is to give effect to the intent of the legislature. In this regard, we have often declared that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). However, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). Unquestionably, the Legislature intended, by operation of W. Va.Code § 23–4–2(c)(2)(ii), to pierce the immunity from tort liability granted to employers under our workers' compensation system when all of the five elements enumerated therein have been established. Certainly, however, the Legislature did not intend for an employer to circumvent liability by purposefully avoiding the subjective knowledge element by violating a mandatory regulatory duty. Likewise, we simply cannot condone any employer's attempt to avoid an otherwise viable deliberate intent action by conducting itself "like the proverbial ostrich who sticks his head in the sand to avoid seeing the obvious . . . ." *State ex rel. League of Women Voters of West Virginia v. Tomblin*, 209 W.Va. 565, 578, 550 S.E.2d 355, 368 (2001) (Davis, J., dissenting). Accordingly, we now hold that where an employee has instituted a deliberate intent action against an employer under W. Va.Code § 23–4–2(c)(2)(ii) (1994) (Repl.Vol.1998), and where

the defendant employer has failed to perform a reasonable evaluation to identify hazards in the workplace in violation of a statute, rule or regulation imposing a mandatory duty to perform the same, the performance of which may have readily identified certain workplace hazards, the defendant employer is prohibited from denying that it possessed "a subjective realization" of the hazard asserted in the deliberate intent action, and the employee, upon demonstrating such violation, is deemed to have satisfied his or her burden of proof with respect to showing "subjective realization" pursuant to W. Va.Code § 23–4–2(c)(2)(ii)(B).[11]

In the instant case, Clonch has admitted that it failed to comply with the mandatory duty to perform a hazard evaluation imposed upon it by OSHA. *See* 29 C.F.R. § 1910.132(d)(1). Indeed Clonch brazenly argues in its brief that "[personal protective equipment (PPE) ], including safety glasses, is required *only if* the employer determines, through a hazard assessment, that a hazard exists (or is likely to exist) which necessitates the use of PPE. [Clonch] did not identify a hazard requiring PPE regarding the band cutting job." (Emphasis added). Clonch could not have identified such a hazard by virtue of a hazard evaluation because it violated its mandatory duty to perform such an evaluation. Accordingly, Mr. Ryan is deemed to have met his burden of establishing Clonch's subjective realization with respect to the hazards of the band cutting job and the need for protective glasses. The circuit court's award of summary judgment on this issue was in error, and is hereby reversed.

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, the April 21, 2005, order of the Circuit Court of Nicholas County granting summary judgment to Clonch is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

---

**11.** Of course, the employee must also fulfill his or her burden of establishing the remaining four elements of W. Va.Code § 23–4–2(c)(2)(ii) in or-

der to overcome summary judgment and/or ultimately succeed in his or her deliberate intent action.

BENJAMIN, Justice, dissenting.

(Filed Dec. 15, 2006)

I must respectfully dissent from the majority decision in this matter. In my opinion, the majority contravenes clear legislative intent by deeming a general safety regulation sufficient to satisfy the statutory specificity requirement of a deliberate intent cause of action.[1] The regulation relied upon by the majority requires employers to conduct a hazard assessment in the workplace in order to identify the need for use of personal protective equipment.[2] According to the majority, the failure to conduct a hazard assessment not only satisfies the statutory requirement that a specifically applicable safety regulation be violated but also precludes the employer from denying a subjective realization of risk. In so finding, the majority creates, at Syllabus Point 3, new law at odds with the "specifically applicable" language of W. Va.Code § 23–4–2(c)(2)(ii)(c) and essentially negates the statutory cause of action's subjective realization requirement. The majority's interpretation of the deliberate intent statute in this matter simply does not, in my opinion, comply with express statutory purposes and Legislative intent.

The Legislature's purpose is establishing a deliberate intent cause of action was clearly set forth in W. Va.Code § 23–4–2(c)(1).[3] Therein, the Legislature:

> declared that enactment of this chapter and the establishment of the workers' compensation system in this chapter was and is *intended to remove from the common law tort system all disputes between or among employers and employees* regarding the compensation to be received for injury or death to an employee except as herein expressly provided, and to establish a system which compensates even though

the injury or death of an employee may be caused by his or her own fault or the fault of a co-employee; that the immunity established in sections six and six-a, article two of this chapter, is an essential aspect of this workers' compensation system; *that the intent of the Legislature in providing immunity from common law suit was and is to protect those so immunized from litigation outside the workers' compensation system except as herein expressly provided;* that, *in enacting the immunity provisions of this chapter, the Legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct;* and that it was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter.

W. Va.Code § 23–4–2(c)(1) (emphasis added). *See also,* Syl. Pt. 2, *Bell v. Vecellio & Grogan, Inc.,* 197 W.Va. 138, 475 S.E.2d 138 (1996) ("W. Va.Code 23–4–2(c) (1991) represents the wholesale abandonment of the common law tort concept of a deliberate intention cause of action by an employee against an employer, to be replaced by a statutory direct cause of action by an employee against an employer expressed within the workers' compensation system."); *Mayles v. Shoney's Inc.,* 185 W.Va. 88, 92, 405 S.E.2d 15, 19 (1990) (recognizing that intent of deliberate intent statute was "to make it more difficult for an employer to lose the immunity provided to him by the Workers' Compensation Act.").

The statute provides two separate and distinct methods of proving "deliberate intention" so as to remove Workers's Compensation immunity. The employee may prove the employer "acted with a consciously, subjec-

---

**1.** At the time of the incident at issue herein, the statutory deliberate intent provisions at issue herein were codified within W. Va.Code § 23–4–2(c). The relevant provisions have been subsequently amended and are currently codified at W. Va.Code § 23–4–2(d) (2005). I will, however, consistent with the majority opinion refer to and discuss the prior W. Va.Code § 23–4–2(c).

**2.** *See,* note 6, majority opinion.

**3.** Currently W. Va.Code § 23–4–2(d)(1) (2005). The 2005 version of this provision contains minor grammatical changes which do not affect the substance of the text.

tively and deliberately formed intention to produce the specific result of injury or death to an employee." W. Va.Code § 23–4–2(c)(2)(i). Or, the employee may offer evidence proving the five specific requirements set forth in W. Va.Code § 23–4–2(c)(2)(ii). Syl. Pt. 2, *Mayles*; Syl. Pt. 3, *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991). Appellant has only relied upon W. Va.Code § 23–4–2(c)(2)(ii) in the instant action. Thus, to survive summary judgment, he is required to demonstrate that a material question exists as to whether each of the following facts may be proven:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;
>
> (C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and
>
> (E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

---

4. 2005 amendments to this statute changed the language in subsection (B) from "employer had a subjective realization and an appreciation" to "employer, prior to the injury, *had actual knowledge.*" (Emphasis added).

W. Va.Code § 23–4–2(c)(2)(ii). I believe the circuit court properly granted summary judgment in light of Appellant's failure to offer sufficient proof that these five statutory requirements may be met in the instant action.

The majority and the parties focus upon Appellant's evidence relating to requirements (B) and (C), the "subjective realization"[4] and "specifically applicable" requirements. The majority opinion hinges upon a determination that a federal OSHA regulation, 29 C.F.R. § 1910.132, requiring "employers" to conduct a hazard assessment and determine the need for employees to use personal protective equipment satisfies the "specifically applicable" requirement of subsection (C). To accomplish this, the majority takes the statutory requirement in W. Va.Code § 23–4–2(c)(2)(ii)(c), "...which statute, rule, regulation or standard was *specifically applicable to the particular work or working condition involved ...*", and replaces it with the following phrase found at Syllabus Point 3 of the majority opinion: "Where such statute, rule, regulation or standard imposes a specifically identifiable duty upon an employer ... and where the statute, rule, regulation or standard asserted by the employee is *capable of application to the specific type of work involved.*" (Emphasis added.) This judicial modification of the standard necessary for maintenance of a statutory cause of action is improper. I disagree with this judicial rewrite.

The general, rather than specific, nature of the OSHA regulation is evidenced by its very title—which is "General requirements." 29 C.F.R. § 1910.132 (2006). It is applicable to all employers, not specifically to the lumber industry. To the contrary, W. Va.Code § 23–4–2(c)(2)(ii)(C) requires the statute, rule or regulation relied upon to be "specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions."[5] Our case law

---

5. The majority attempts to avoid this statutory requirement that by deeming that it requires only that the "statute, rule, regulation or standard asserted by an employee be capable of application to the specific work at issue." Opinion at 764. By deeming the regulation at issue to be

confirms the need for the standard to be specifically applicable to the particular working condition involved. *See, Mayles,* 185 W.Va. at 95, 405 S.E.2d at 22 (noting subsection (C) requires "proof that the specific unsafe working condition constituted a violation of a state or federal safety statute ... specifically applicable to the particular working condition involved, as contrasted with a statute or standard generally requiring safe working conditions."); *Miller v. City Hospital, Inc.,* 197 W.Va. 403, 409–10, 475 S.E.2d 495, 501–2 (1996) *(per curiam )* (noting general knowledge does not satisfy statutory specificity requirement); *Tolley v. ACF Industries, Inc.,* 212 W.Va. 548, 575 S.E.2d 158, 166–7 (2002) *(per curiam )* (finding generalized allegations of non-compliance with safety regulations, including generalized notion of requiring safe work place insufficient to satisfy statutory requirements). As noted by a federal district court discussing the type of statute or rule needed to satisfy W. Va.Code § 23–4–2(c)(2)(ii)(C), "the statute or standard must *specifically* address the unsafe working condition in question. It is not enough to prove that a part on a piece of machinery was defective and that a statute or regulation required all parts to be in good working order." *Greene v. Carolina Freight Carriers,* 663 F.Supp. 112 (S.D.W.Va.1987), *aff'd,* 840 F.2d 10 (4th Cir.1988). In my opinion, 29 C.F.R. § 1910.132 is an OSHA regulation which attempts to satisfy the general goal of requiring a safe workplace and working conditions. As such, it does not meet statutory specificity requirements.

I am deeply concerned regarding the potential breadth of the majority decision in this matter; a result which would be completely at odds with the Legislature's expressed intent in creating this statutory cause of action. Suppose the employer herein had performed a hazard assessment as set forth in 29 C.F.R. § 1910.132, but had failed to identify the purported eye hazard at issue herein (or whatever condition forms the basis of a claim). Under the majority's reasoning, would an argument that the employer was

negligent in performing the hazard assessment now be sufficient to satisfy deliberate intent requirements? I fear that is precisely the probability which will now occur by virtue of the majority's actions herein, despite the clear legislative intent to immunize employers from mere negligence.

As stated above, the majority has, in essence, negated the statutory "subjective realization" requirement in those instances where an employee can argue there was some general duty to discover a potential hazard. In my opinion, the rule outlined in Syllabus Point 6 is also contrary to both statutory language and prior decisions of this Court. This Court previously held that the subjective realization requirement "is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong possibility of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge." Syl. Pt. 3, in part, *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991). *See also, Tolley,* 212 W.Va. at 556, 575 S.E.2d at 165 (quoting *Blevins); Deskins v. S.W. Jack Drilling Co.,* 215 W.Va. 525, 530, 600 S.E.2d 237, 242 (2004) *(per curiam )* (same). At most, an argument can be made that if a hazard assessment had been performed, the employer reasonably should have known of the risk. Until now, that has not been enough to satisfy the subjective realization requirement under our law. By negating this statutory requirement, the majority likewise negates the possibility that the hazard assessment, if performed, would not have identified the alleged unsafe working condition as a hazard. Assuming a regulation requiring a hazard assessment satisfies statutory specificity requirements, the better approach would have been to require a showing that a reasonable hazard assessment would have identified the alleged unsafe working condition in question before deeming W. Va.

applicable to the "labor industry" (rather than the lumber industry as is involved in this matter) and finding that Appellant performs "labor", the majority deems the regulation to met statutory requirements. I disagree. The general "labor"

regulation relied upon does not set forth a requirement that eye protection be worn when banding lumber as would be needed to meet statutory requirements in this matter.

Code § 23–4–2(c)(2)(ii)(B) to have been be satisfied by default.

In my opinion, the circuit court properly granted summary judgment in this matter. Accordingly, I dissent.