No. 12-0548 – <u>McComas v. ACF Industries, LLC</u>

**FILED**

**October 25, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, dissenting:

The majority's opinion constitutes but yet another step toward its ultimate goal of rendering our "deliberate intent" statute a meaningless codification of simple workplace negligence standards. This effort began in 2006 with *Ryan v. Clonch Industries, Inc.*, 219 W.Va. 664, 639 S.E.2d 756, and, despite the Legislature's unmistakable attempt to combat such judicial activism via amendment to the statute, the majority continues to insert its own policy-making into West Virginia Code § 23-4-2(d)(2)(ii)(B). The majority has now created a new syllabus point inexplicably holding that "actual knowledge" can be proven by establishing what an employer "should have known," but for its negligent failure to inspect. Moreover, it continues to stretch the "specifically applicable to the particular work and working condition" language in § 23-4-2(d)(2)(ii)(C) into oblivion. It is unclear at this point what more the Legislature must do to make clear its intent to a majority of this Court so as to prevent further judicial erosion of our "deliberate intent" standards.

In the case *sub judice*, it is undisputed that the petitioner was injured as a result, in some measure, of the deteriorated 480-volt electrical box. It is further undisputed that ACF Industries, LLC (hereinafter "ACF") had no actual knowledge of the deteriorated condition of the electrical box because it performed no inspection or

1

maintenance on the box. This omission was negligent at best and reckless at worst. However, regardless of how one characterizes this omission on the part of ACF, the Legislature has expressly stated that the deliberate intent standards codified in West Virginia Code § 23-4-2(d)(2) provide a cause of action *only* upon violation of "more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct[.]" W.Va. Code § 23-4-2(d)(1). Twenty years ago, this Court properly recognized that proof of what an employer "should have known" was insufficient for purposes of the standard of "subjective realization":

> [A] plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. *This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.*

Syl. Pt. 3, in part, *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385, 393 (W.Va. 1993) (emphasis added). "The standard . . . to satisfy [the "subjective realization" element] is 'actual' knowledge. This is a high threshold that cannot be successfully met by speculation or conjecture." *Mumaw v. U.S. Silica Co.*, 204 W.Va. 6, 12, 511 S.E.2d 117, 123 (W.Va. 1998).

2

Ironically, since *Blevins*, the Legislature has only attempted to *bolster* the knowledge requirement under subparagraph (d)(2)(ii)(B), yet this Court has set itself on a parallel track in the opposite direction. The majority relies heavily on syllabus point 6 in *Ryan*, which holds that failure to perform a hazard inspection where such is mandatory is sufficient to *impute* "subjective realization":[1]

> Where an employee has instituted a deliberate intent action against an employer under W.Va. Code § 23–4–2(c)(2)(ii) (1994) (Repl. Vol. 1998), and where the defendant employer has failed to perform a reasonable evaluation to identify hazards in the workplace in violation of a statute, rule or regulation imposing a mandatory duty to perform the same, the performance of which may have readily identified certain workplace hazards, the defendant employer is prohibited from denying that it possessed "a subjective realization" of the hazard asserted in the deliberate intent action, and the employee, upon demonstrating such violation, is deemed to have satisfied his or her burden of proof with respect to showing "subjective realization" pursuant to W.Va. Code § 23–4–2(c)(2)(ii)(B).

219 W.Va. 664, 639 S.E.2d 756. Recognizing that this syllabus point was crafted with regard to the less forceful "subjective realization" standard contained in the pre-2005 version of the statute, the majority now extends that holding to the "actual knowledge" standard which replaced it. In short, despite the Legislature's unmistakable attempt to stop this Court from construing the element of actual knowledge out of the statute, the majority continues its quest to judicially amend the statute, insisting that actual knowledge can be established by proving what an employer "should have known" had it been more diligent. The majority attempts to vitiate the force of the statute's amendment

---

[1]Of course, "imputed" subjective realization is an intellectually dishonest concept which is wholly at odds with itself.

3

and this explicit reiteration by the Legislature of the "actual knowledge" requirement by summarily concluding in footnote ten that "subjective realization" was always construed by the Court as meaning "actual knowledge"; therefore, the Legislature's amendment is insignificant to its analysis.

In *Roberts v. Consolidation Coal Co.,* 208 W.Va. 218, 539 S.E.2d 478 (2000), this Court rejected the application of common law concepts such as comparative negligence to our deliberate intent statutory scheme, observing that "'the right to workmen's compensation benefits is based wholly on statutes, in no sense based on the common law; . . . such statutes are sui generis and controlling . . . [and] the rights, remedies and procedures thereby provided are exclusive[.]'" *Id.* at 234, 539 S.E.2d at 494 (quoting *Bounds v. State Workmen's Comp. Comm'r*, 153 W.Va. 670, 672, 172 S.E.2d 379, 383 (1970)). Moreover, the interpretation and application of statutory language "does not . . . license a court to simply ignore or rewrite statutory language on the basis that, as written, it produces an undesirable policy result." *Taylor-Hurley v. Mingo County Bd. of Educ.,* 209 W.Va. 780, 788, 551 S.E.2d 702, 710 (2001). Without even a hint of reluctance or justification, the majority has now supplanted the express "actual knowledge" standard with one of quintessential "constructive knowledge," a common law concept. ("Knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Black's Law Dictionary* 950 (9th ed. 2009). The majority ostensibly believes that the egregious facts in the instant action regarding ACF's complete failure to inspect the electrical box in roughly forty to

4

fifty years of usage somehow warrant continued extension and application of the "constructive knowledge" standard first read into the statute in *Ryan*. ("ACF's conscious indifference to that duty [to inspect the electrical box] in the circumstances herein may not serve to avoid the actual knowledge requirement . . . "). However, "[t]he 'deliberate intention' exception to the Workers' Compensation system is meant to deter the malicious employer, not to punish the stupid one." *Helmick v. Potomac Edison Co.,* 185 W.Va. 269, 274, 406 S.E.2d 700, 705 (1991).

Moreover, there is nothing in the majority opinion which precludes an injured employee from urging that an inspection that was simply negligently performed gives rise to use of the "constructive knowledge" standard articulated by the majority. *See also Ryan,* 219 W. Va. at 677, 639 S.E.2d at 769 (Benjamin, J., dissenting) ("Under the majority's reasoning, would an argument that the employer was negligent in performing the hazard assessment now be sufficient to satisfy deliberate intent requirements?"). Finally, the majority's insertion of the constructive knowledge standard has now virtually snatched the use of summary judgment right out of the hands of the litigants and lower courts since the determination of what the employer "should have known" will inevitably be fact-driven. This, too, is in contravention of the Legislature's design: "[I]t was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter." W.Va. Code § 23-4-2(d)(1).

5

The practical inefficacy and wide-reaching effect of the majority's new syllabus point is easily demonstrated. Many industries, such as mining or trucking, are heavily regulated and require a litany of generalized inspections. These inspections are largely broad, shift-based, hazard assessments. While such inspections are much-desired, it would be difficult to identify an alleged specific unsafe working condition that argueably "should have" been discovered in the course of one of the inspections. The failure to discover any such condition is, obviously, the result of oversight or simple negligence. This is quite simply not the type of workplace oversight for which a statutory "deliberate intent" is designed to provide redress.

The danger of attributing knowledge to the employer of hazards which could have been ascertained from these generalized safety inspections is heightened by the majority's lax construction of the requirement that the safety standard violation be one which is "specifically applicable to the particular work and working condition involved[.]" In the instant case, the petitioner worked as a welder in an industrial building for an employer who was in the business of constructing railway cars. While the parties and the majority's handling of the "mandatory" (as opposed to the "applicability") nature of NFPA 70B is far from satisfying, there is no dispute that NFPA 70B provides "preventive maintenance for electrical, electronic, and communication systems and equipment-such as those used in industrial plants, institutions and commercial buildings and large multi-family residential complexes-to prevent equipment failures and workers

6

injuries."[2]  In sum, it is relevant to electrical equipment maintenance in non-single-family-residential buildings, i.e., virtually any common working environment.  To suggest that such a standard is not precisely the type of "standard generally requiring safe workplaces, *equipment* or working conditions," which is insufficient to support a "deliberate intent" claim, defies common sense.  W.Va. Code § 23-4-2(d)(2)(ii)(C) (emphasis added).

As noted above, the Legislature made clear that our deliberate intent statutory scheme is intended to be of "narrow application and contain[] more specific mandatory elements than the common law tort system[.]"  W.Va. Code § 23-4-2(d)(1).  The electrical box that supplied power to the area where the petitioner was working was not peculiar to his work as a welder constructing railway cars.  Moreover, the NFPA guidelines for electrical equipment maintenance have no particular application to welding or constructing railway cars.  The requirement that electrical equipment be inspected and/or maintained in good working order is a general safety standard requiring safe electrical equipment; every workplace has electrical equipment, all of which should be maintained in good working order.  Failure to do so does not necessarily rise to the level of "deliberate intent" as prescribed by the Legislature.  To construe the NFPA standard at issue as specifically applicable to the petitioner's work commensurately renders an injury occasioned by essentially any aspect of an employee's work environment susceptible to

_____

[2]*See* National Fire Protection Association, *NFPA 70B:  Recommended Practice for Electrical Equipment Maintenance*, http://www.nfpa.org/codes-and-standards/document-information-pages.

7

the same treatment. Such a construction makes the "specifically applicable" language of West Virginia Code § 23-4-2(d)(2)(ii)(C) meaningless. "It is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma-Chief Logan No. 4523, Veterans of Foreign Wars of the United States, Inc.*, 147 W.Va. 645, 129 S.E.2d 921 (1963).

In sum, despite the plain language of West Virginia Code § 23-4-2(d)(2)(ii), I fear that the majority has now essentially manufactured a means of injecting ordinary workplace negligence into our "deliberate intent" statutory scheme. As a result, I am compelled to respectfully dissent. I am authorized to state that Chief Justice Benjamin joins in this dissent.