693 S.E.2d 789

**Kyle D. RAMEY and Trina Ramey, Plaintiffs Below, Appellants**

v.

**CONTRACTOR ENTERPRISES, INC., Defendant Below, Appellee.**

No. 34804.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 27, 2010.

Decided April 15, 2010.

---

Thomas M. Plymale, Plymale & Maddox, PLLC, Huntington, WV, for Appellants.

Jeffrey M. Wakefield, Shawn C. Gillispie, Christopher A. Brumley, Eric L. Silkwood, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for Appellee.

PER CURIAM:

Kyle D. Ramey and Trina Ramey (hereinafter jointly referred to as "Appellants") appeal the June 27, 2008, summary judgment order of the Circuit Court of Logan County. As a result of this order, Appellants' deliberate intention action brought pursuant to

West Virginia Code § 23–4–2(d)(2)(ii)[1] against Contractor Enterprise, Inc. (hereinafter "Contractor Enterprise" or "employer") was dismissed. Appellants claim that the lower court erred in its grant of summary judgment by not viewing the evidence in the light most favorable to them as the non-moving party, and concluding that no genuine issue of material fact existed regarding two of the five required statutory elements[2] relevant to this deliberate intent action. Specifically, the lower court found there was insufficient evidence presented to support the existence of the elements of the employer having actual knowledge of the unsafe working condition and the employer's intentional exposure of Mr. Ramey to the unsafe working condition. W.Va.Code § 23–4–

2(d)(2)(ii)(B) and (D). After due consideration of the arguments of the parties in light of the record before us and the relevant law, we affirm the decision of the circuit court.

## I. Factual and Procedural Background

The basis of the deliberate intent action in this case is a job-related accident which occurred on March 3, 2005. Mr. Ramey was employed by Contractor Enterprise as a highwall drill operator at the Snap Creek #1 Mine in Logan County and was operating a drill at the mine site on that date. Mr. Ramey's job as a drill operator required him to drill holes in a prescribed pattern set forth in a ground control plan.[3]

The accident investigation report completed by the federal Mine Safety and Health Administration (hereinafter "MSHA")[4] re-

---

**1.** West Virginia Code § 23–4–2 was last amended by the Legislature in 2005 with the effective date of July 1 of that year. Although the underlying accident in this case occurred roughly four months before the effective date of the 2005 amendments, no issue is raised regarding the 2005 statutory changes. The only notable language difference between the versions of the statute is addressed at footnote 13 in the discussion portion of this decision. Hence, we follow the parties' practice of relying on the current version of this statute which includes the 2005 amendments.

**2.** The five elements necessary to establish a deliberate intent claim under West Virginia Code § 23–4–2(d)(2)(ii) are set forth in the statute as follows:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three [§ 23–4–1] whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

**3.** A ground control plan is a document required to be submitted by a mining concern to the Mine Safety and Health Administration for approval before the company begins mining operations. The plan outlines the methods and procedures that will be used to address safety issues at a particular mining site. *See* 30 C.F.R. § 77.1000.

**4.** In order to complete the report, MSHA inspectors supplemented their physical inspection of the site with information obtained from interviews with persons who had knowledge of the accident. It is not clear from the report or any other material in the record of this case who supplied any given piece of supplemental information. The MSHA report instead provides a single list of people composed of those who either had been present at the accident location and provided the investigators with information about the accident or simply were present during the investigation. This list included officials from the company (President, Manager of Mines, Superintendent, Foreman and Safety Consultant) as well as company employees (the highwall drill operator working with Mr. Ramey at the site that day, another highwall drill operator and an equipment operator).

garding this incident addressed the operational ground control plan [5] as follows:

> The operator's ground control plan in place at the time of the accident included a drill pattern to keep the drill operator and drill at least four feet from the highwall's edge. The drill operator did not follow normal operating procedures by positioning the drill parallel with the existing highwall. This action exposed the drill operator to a hazard of falling over the highwall. If the drill had been positioned as the ground control plan stated, the drill would have been at least six feet from the highwall.

The MSHA report also contained the following description of the accident:

> On Wednesday, March 2, 2005, at approximately 6:00 a.m., the first shift crew arrived at the parking area and received instructions from Randy Maynard, pit foreman. Maynard gave the drill crew, composed of Ramey and John Chambers, instructions for drilling the Stockton Pit. Ramey and Chambers traveled to the Stockton bench and began drilling. Ramey finished the row of drillholes and the drill was moved to the center of the next section to be drilled. Ramey exited the drill and marked the next row of holes to be drilled. Ramey then moved his drill towards the edge of the highwall, parallel with the existing highwall, in close proximity to the next hole to be drilled. Ramey got out of the driller's compartment and was last seen standing between the drill access ladder and the edge of the highwall. Ramey slipped [6] and fell over the 80–foot tall highwall. The distance between the highwall drill and the edge of the highwall was measured and found to be 23 inches.

The overall conclusion MSHA reached regarding the accident was summarized in the report as:

> Ramey positioned himself between the highwall drill and the edge of the highwall when he slipped or fell over the 80–foot highwall. The fall, which resulted in serious injuries,[7] occurred because the victim was positioned in a hazardous location without a safety belt or line, where there was a danger of falling.

In the "Root Cause Analysis" section of the MSHA report, the cause of the accident was identified as Mr. Ramey positioning himself "within twenty-three inches of the edge of the highwall without being tied off or secured in a manner that would have prevented falling over the embankment." As a result of this finding the employer was cited for a violation of 30 C.F.R. § 77.1710(g), which requires mining employees to be equipped with safety belts and lines where there is danger of falling. As further noted in the "Root Cause" section of the MSHA report, the employer took corrective action after the accident by making "an addition to the ground control plan requiring persons working six feet or less from the edge of the highwall be tied off. Under no circumstances will anyone be working within four feet of the edge of the highwall."

On March 2, 2007, Appellants filed a deliberate intent action pursuant to West Virginia Code § 23–4–2(d)(2)(ii) against Contractor Enterprise claiming that the employer exposed Mr. Ramey to a specific unsafe working condition without the proper training or safety equipment and with the knowledge that the unsafe condition presented a high degree of risk and strong probability of serious injury or death. Following the time period initially allocated for discovery by the trial court, Contractor Enterprise moved for summary judgment. Contractor Enterprise submitted a memorandum in support of its motion, with the following documents attached: the Rameys' complaint, MSHA Report of Investigation, deposition of Mr. Ramey, and a variety of training documentation the employer maintained on Mr. Ramey. Contractor Enterprise also submitted a Daily

---

**5.** The applicable ground control plan was not attached to the MSHA report filed with the court below or otherwise made part of the record presented on appeal in this case.

**6.** It was noted elsewhere in the MSHA report that approximately four inches of snow was on

the ground and it was still snowing at the time of the accident.

**7.** The injuries included a broken right leg and knee, head trauma, facial disfigurement, loss of his left eye and cognitive impairment.

and Onshift Report and Preshift–Mine Examiner's Reports for the day of the accident as attachments to the reply it filed to Appellants' amended response [8] to the summary judgment motion. The evidence Appellants relied on and supplied as attachments to their amended response to the summary judgment motion included: Mr. Ramey's deposition, a Rule 26 Expert Witness Disclosure in which Appellants' attorney outlined what he believed the testimony of the named mine safety expert, H.S. Grose, would entail,[9] and the affidavit of Mark Kennedy, a former employee of Contractor Enterprise who had left the company's employ as a bull dozer operator six weeks before the accident.[10]

A hearing was held on the summary judgment motion on May 14, 2008, and the order granting summary judgment to Contractor Enterprise was filed on June 27, 2008. The core ruling in the order was that even when viewed in the light most favorable to Appellants as the non-moving party, the evidence failed to demonstrate that a genuine issue of material fact existed with regard to the elements of a deliberate intent action as set forth in (B) and (D) of West Virginia Code § 23–4–2(d)(2)(ii).

Appellants thereafter petitioned this Court for review of the summary judgment decision, and the appeal was granted on April 8, 2009.

## II. Standard of Review

██ As is clearly established, "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

██ According to the express provisions of Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.Va. R. Civ. P. 56(c). The concept of "material fact" and "genuine issue" were succinctly explained by the U.S. Court of Appeals in the Eleventh Circuit as follows:

> [a]n issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248[,] 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998 (11th Cir.1992). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

*Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). We have further explained that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of [material] fact to be tried and inquiry concerning the facts is not desirable to clarify the application of law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Thus, "[t]he question

---

8. The initial response to the summary judgment motion filed by Appellants merely informed the court that they were unable to fully respond to the motion due to the illness of their expert witness.

9. Among the things Appellants' counsel represented Mr. Grose would maintain included that adequate on-site inspections by certified individuals were not conducted at the drilling site and that Mr. Ramey did not receive proper training and instruction in performing his job as a driller or in using a ground control plan or general safety plan while performing his job as a driller.

10. Mr. Kennedy's statements under oath included having witnessed highwall drilling machines placed so close to the edge of the highwall that the curtains of the machines could be seen from below, and that on the last day he worked for

Contract Enterprise which was about six weeks before Mr. Ramey's fall, he had complained to an unnamed supervisor that the mining company was having people work too close to the highwall edges and expressed concern that someone was going to be hurt or killed. Mr. Kennedy also maintained that safety meetings conducted by Contractor Enterprise consisted of employees signing attendance sheets without any actual instruction or training being provided. It is noteworthy that the Kennedy affidavit filed with the lower court contained a provision which was stricken by the affiant (as verified by the affiant's initials) which deleted the assertion that Mr. Kennedy had operated a drill for the company and had complained to his supervisor about having to work too close to the edge of the highwall while he operated the drill.

to be decided on a motion for summary judgment is whether there is a genuine issue of [material] fact and not how that issue should be determined." *Id.* at Syl. Pt. 5.

We proceed with our review guided by these principles.

### III. Discussion

■■■ The five material elements of a deliberate intent action brought pursuant to West Virginia Code § 23–4–2(d)(2)(ii)(A–E) [11] may be summarized as: (A) the existence of a *specific unsafe working condition* posing a high degree of risk of injury; (B) an *employer's actual knowledge of the specific unsafe working condition* and the risk it posed before injury occurred; (C) the *specific unsafe working condition is a violation of law or established standard in the industry;* (D) despite being aware of the first three conditions the *employer intentionally exposed an employee to the specific unsafe working condition;* and (E) the *existence of a serious compensable injury or death* of the employee subjected to the unsafe condition. This Court has held that "[t]o establish 'deliberate intention' in an action [brought pursuant to W.Va.Code § 23–4–2(d)(2)(ii),] ... a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements." Syl. Pt. 2, in part, *Helmick v. Potomac Edison Co.,* 185 W.Va. 269, 406 S.E.2d 700 (1991). Moreover, summary judgment is statutorily required to further the legislative intent of "prompt judicial resolution of issues of [employer] immunity from litigation" under the workers' compensation system when a court finds "that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) [of the deliberate intent statute] ... do not

exist." W.Va.Code § 23–4–2(d)(2)(iii)(B); *see also Mumaw v. U.S. Silica Co.,* 204 W.Va. 6, 10–11, 511 S.E.2d 117, 121–22 (1998) (a summary judgment motion made by an employer in a W.Va.Code § 23–4–2(d)(2)(ii) action is appropriate where the nonmoving party has failed to make a sufficient showing on an essential element of the case it has the burden to prove).

In the present case, the lower court considered the five statutory factors and determined that the evidence before it established genuine issues of material facts with regard to the elements of a specific unsafe working condition, a violation of law, and a serious compensable injury—subparagraphs (A), (C) and (E) respectively of the deliberate intent statute. Yet, the lower court concluded summary judgment was indeed appropriate because the evidence before it did not adequately demonstrate the existence of the required elements contained in subparagraphs (B) and (D) of the statute. As related in the summary judgment order, the court found "[t]here are no facts that would show that the Defendant had actual knowledge of any of the alleged unsafe working conditions [12] and likewise, no evidence to support that the Defendant intentionally exposed Plaintiff to a known unsafe working condition." Appellants maintain that when the evidence in the record is properly weighed in their favor as the non-moving party that genuine issues regarding the elements of actual knowledge and intentional exposure do exist. We arrive at a different conclusion.

### A. Actual Knowledge [13]

■■■ Appellants first argue that the affidavit of Mark Kennedy showed that Contractor

---

**11.** The full text of the statute appears at n. 1 *supra.*

**12.** The trial court recited the three unsafe working conditions asserted by Appellants in the summary judgment order: "lack of training, dangerous highwall conditions, and lack of a safety harness or lanyard."

**13.** At the time that Mr. Ramey was injured, subparagraph (B) of the deliberate intent statute did not contain the term "actual knowledge," referring alternatively to the employer's "subjective realization and ... appreciation of the existence of ... [the] specific unsafe working condition."

2003 W.Va. Acts c. 27. Even so, the terms "subjective realization" and "appreciation" had been interpreted to mean actual knowledge in syllabus point three of *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991) (Statutory terms of subjective realization and appreciation are "not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.").

Enterprise had actual knowledge because Mr. Kennedy's sworn statements establish that he had advised a supervisor at Contract Enterprises several weeks before Mr. Ramey's accident that equipment was being operated too close to the highwall edges. The affidavit did not state that Mr. Kennedy told anyone that drills were being operated too close to the highwall edges. Consequently, we do not find that the assertions in the Kennedy affidavit demonstrate that Contractor Enterprise was aware of the specific unsafe working condition of drill operators working dangerously close to the edge of the highwall, nor does it show that the employer was informed that Mr. Ramey was operating his drill too close to the edge of the highwall.

According to his affidavit, Mr. Kennedy had worked for Contractor Enterprise as a bull dozer operator and his last day of work for the company was six weeks before Mr. Ramey's accident. In the affidavit, Mr. Kennedy made general statements as to his belief that the company pushed production over safety and that safety meetings conducted by the company consisted of signed attendance sheets without any instruction or training. With particular regard to work being done overly close to the edge of the highwall, Mr. Kennedy stated that "he observed safety violations of the drilling machines operated by Kyle Ramey" and that he had "seen these machines placed so close to the highwall that the curtains on the machine could be seen from below." However, it is clear from the affidavit that Mr. Kennedy did not tell anyone about drilling machines being operated too close to the highwall edges. The following is the *only statement* in the affidavit indicating what Mr. Kennedy *told the unnamed supervisor* which is relevant to the statutory element of actual knowledge. As stated under oath by Mr. Kennedy,

the last day he worked at Snap Creek No. 1 Mine he was operating a bull dozer on the edge of a highwall. He advised the supervisor that this was too dangerous and refused to work the remainder of his shift. He further told the supervisor that the company was working people too close to the highwall edges without any regard to safety. He also told the supervisor someone was going to get hurt or killed.

As stated, even if an unnamed supervisor of Contractor Enterprise became aware of work being done dangerously close to the edge of the highwall, Mr. Kennedy's statement would only establish that some unidentified person was informed that Mr. Kennedy as a bull dozer operator was exposed to the specific unsafe working condition of operating his bull dozer too close to the edge of the highwall.

In addition to being unclear as to the name of the particular supervisor to whom Mr. Kennedy made his statement, the affidavit does not reveal if the unnamed supervisor had any role in supervising the *drilling* operations at the mine site or the extent of the supervisor's authority or area of responsibility. The statement could have been made to a supervisor having no real knowledge or responsibility regarding mining operations. Furthermore, the statements in the affidavit regarding observing drilling machines being operated so close to the edge of that highwall that the curtains of the machines were visible from below apparently were not made to anyone. Thus Mr. Kennedy's statements fall short of shedding any light on whether Contractor Enterprise had actual knowledge of *drilling equipment* being operated closer to the edge of the highwall than the ground control plan specified.

Appellants maintain that the proffered opinions of their safety expert also serve to establish the element of actual knowledge. The record before us contains no submissions as to the actual opinions held or sworn statements made by Appellants' expert. The only item in the record regarding the expert's opinions is a document submitted with Appellants' amended response to the motion for summary judgment styled "Rule 26 Expert Witness Disclosure." This document contains the representations of Appellants' attorney as to what he opined would be the expert's position. Specific to the element of actual knowledge, Appellants claim that the expert had the opinion that Contractor Enterprise did not perform mandatory workplace inspections required by federal regulations to identify unsafe working conditions. According to Appellants, in compliance with

the reasoning of this Court's decision in *Ryan v. Clonch*, 219 W.Va. 664, 639 S.E.2d 756 (2006), such failure to conduct mandatory inspections bars Contractor Enterprise from denying that it possessed actual knowledge of the hazard. Appellants reliance on *Ryan* is misplaced given the significantly different facts in the case now pending.

The *Ryan* case involved an employer who admitted that it had failed to perform a mandatory hazard inspection which would have revealed the unsafe working condition that resulted in the injury on which the deliberate intent action was based. The employer in *Ryan* then attempted to claim that it had no actual knowledge of the unsafe working condition. We concluded in syllabus point six of *Ryan* that "where ... [an] employer fail[s] to perform a reasonable evaluation to identify hazards in the workplace in violation of a statute, rule or regulation imposing a mandatory duty to perform the same, the performance of which may have readily identified certain workplace hazards, the ... employer is prohibited from denying that it possessed ... [actual knowledge] of the hazard asserted in the deliberate intent action." *Id.* at 667, 639 S.E.2d at 759.

The facts in the pending case are clearly distinguishable from those considered in *Ryan* as the employer here did not fail to carry out its inspection duties. Contractor Enterprise supplied the lower court with inspection documents—without apparent objection to their submission—representing that pre-shift and on-shift worksite inspections had been conducted the day of and prior to the accident involving Mr. Ramey. The employer thus demonstrated it had complied with the federally required inspection schedule as MSHA regulations mandate a minimum of daily inspection of mine sites for hazardous conditions.[14] Hence we concur with the trial court's conclusion that actual knowledge could not be imputed to the employer pursuant to our holding in *Ryan* because there was no failure on the part of the employer to conduct mandatory inspections.

14. *See* 30 C.F.R. § 77.1713.

**B.  Intentional exposure**

■ As we summarized in *Tolley v. ACF Industries, Inc.*, 212 W.Va. 548, 558, 575 S.E.2d 158, 168 (2002), in order to establish the existence of intentional exposure in a deliberate intent action there "must be some evidence[ ] that with conscious awareness of the unsafe working condition ... an employee was directed to continue working in that same harmful environment." Even if there was sufficient evidence of actual knowledge in this case, we find no evidence that Contractor Enterprise instructed, ordered or directed Mr. Ramey to operate his drill any closer to the edge of the highwall than the acceptable four foot distance specified in the operational ground control plan that had been approved by MSHA.

■ Appellants argument regarding proof of intentional exposure is not clearly articulated. It appears Appellants are asserting that the element of intentional exposure exists based upon the showing that Contractor Enterprise sent Mr. Ramey to a drill site knowing that Mr. Ramey did not have adequate training, including instruction on following the ground control plan. In other words, it is alleged that the employer knew Mr. Ramey was completely unaware of the hazards of working too close to the edge of a highwall but sent him to the highwall job site armed without knowledge of the dangerous condition or without protection from the hazard in the form of equipment such as a safety harness.

Our examination of the record, specifically the MSHA accident investigation report, Mr. Ramey's deposition and the training documentation Contractor Enterprise supplied to the lower court, discounts the proposition that Mr. Ramey was untrained and unaware of the dangers posed by working too close to the edge of a highwall. The MSHA report revealed that Mr. Ramey had nearly two years mining experience, and a total of four years experience as a drill operator at mines and construction sites. During his deposition, Mr. Ramey said that he had been trained by Contractor Enterprise for at least three hours on the actual operation of the

drill. While he also said in response to questioning that he could not remember what a ground control plan is, not knowing and not remembering are two very different things—especially considering the extensive memory loss Mr. Ramey admittedly sustained as a result of the fall from the highwall edge. Training was also addressed in the MSHA report. The report said that training had been conducted by Contractor Enterprise as mandated by federal regulation. Hazard training is expressly required under MSHA regulations. 30 C.F.R. § 48.11 (before miners can commence their duties, a company is required to provide the workers with hazard training which must include "[h]azard recognition and avoidance"). Mr. Ramey's attendance at the requisite training sessions was shown through Contractor Enterprise's submission of training attendance records.

In sum, our review of the meager record [15] in this case supports the lower court's conclu-

**15.** While reviewing the record in this case, which is not the model of clarity, it became apparent that both parties were less than diligent in adhering to established judicial procedures. Although we generally reserve commenting on such matters not raised as error, we do so to caution counsel to follow such procedures so as to lend uniformity to trial court records and proceedings, which in turn facilitates appellate review of the record of those proceedings. *See e.g. State ex rel. West Virginia v. Bedell*, 223 W.Va. 222, 225 n. 2, 672 S.E.2d 358, 361 n. 2 (2008).

With regard to Appellants, our concern lies primarily with not acting timely to inform the court of potential delays. Despite the fact that Appellants had repeatedly been unsuccessful over a period of months in reaching the expert they had selected, no motion to extend discovery was filed nor was there any other effort made to inform the trial court of any potential difficulty in complying with the date set for completing discovery. It was not until the discovery cutoff had passed that the court was apprised of any potential delay. Rather than filing a motion to request more time to appropriately respond to the summary judgment motion pursuant to Rule 56(f) of the West Virginia Rules of Civil Procedure, Appellants' counsel filed an abbreviated response to the motion for summary judgment, indicating the inability to fully respond to the summary judgment motion because an expert witness was recuperating from surgery. The lower court, however, entered an order extending the time when the full response to the summary judgment motion was to be submitted, and requiring Appellants' counsel to provide a more detailed justification for the delay in presenting the expert's opinion. The hearing on the summary judgment motion also had to be rescheduled.

The procedural lapses attributable to Contractor Enterprise center on the manner in which exhibits constituting business records were presented to the court for consideration in conjunction with the summary judgment motion. It is generally recognized that when ruling on a motion for summary judgment, "the trial court is precluded from considering any documentary evidence of a type not specified in the summary judgment rule. Evidentiary material not specifically authorized by the summary judgment rule may be considered by the trial court ... *if* it is properly incorporated into an affidavit by reference." 49 C.J.S. *Judgments* § 328 (2009) (emphasis added). *See also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, vol. 10A, § 2721 (Civil 3d ed., 1998). Those materials specifically referred to in Rule 56(c) of the West Virginia Rules of Civil Procedure (hereinafter "Rule 56") are the pleadings, any depositions, answers to interrogatories, and admissions on file as well as affidavits. This Court has recognized and held that Rule 56(c) "does not contain an exhaustive list of materials that may be submitted in support of summary judgment, ... [and] a trial court may consider any material that would be admissible or useable at trial." Syl. Pt. 1, *Aluise v. Nationwide Mut. Fire Ins. Co.*, 218 W.Va. 498, 625 S.E.2d 260 (2005). In order to make that determination, the authenticity of documents presented for the court's consideration at the summary judgment stage needs to be established. Ordinarily, "[u]nsworn and unverified documents are not of sufficient evidentiary quality to be given weight in determining whether to grant a motion for summary judgment. Therefore, documents that do not state that they are made under oath and do not recite that the facts stated are true are not competent summary judgment evidence." 49 C.J.S. *Judgments* § 328 (2009). *See also* 11 *Moore's Federal Practice*, § 56.10[4][c] (3d ed. 2010) (in context of summary judgment, unless a document outside of the record "is self-authenticating and intrinsically trustworthy on its face (a rare situation), this type of document must be introduced by affidavit to ensure its consideration by the court."). Consequently, it would have been proper for the court to ignore the training and inspection documents that Contractor Enterprise supplied as exhibits in support of its summary judgment motion. However, while we do not condone the practice, we do not find that the lower court erred in considering the documents especially since the documents were not pivotal in determining the essential element of actual knowledge, and the record does not reflect that Appellants raised any objection below regarding the authenticity of the documents. *See H. Sand & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450 (2d Cir.1991) (finding that Rule 56 does not preclude consideration of unauthenticated documents when the opposing party does not challenge the authenticity in trial court); *see also* Charles Alan Wright, Arthur R. Miller & Mary

sion that there is no genuine issue as to material facts regarding the deliberate intent statutory elements of actual knowledge and intentional exposure. W.Va.Code § 23–4–2(d)(2)(ii)(B) and (D). Mr. Ramey alleged in his complaint that he was ordered by Contract Enterprise to work in the hazardous working condition of operating a drill less than four feet from the edge of a highwall without being properly trained or equipped. There is no suggestion in the record that Mr. Ramey was required by the employer to operate his drilling equipment less than four feet from the highwall edge. The record before us reveals that the hazardous condition in this case did not occur until Mr. Ramey deviated from the ground control plan and moved his drilling equipment to within twenty-three inches of the highwall. As to training, the record before us shows that the employer provided Mr. Ramey with all MSHA required training, and there is no indication that Mr. Ramey requested additional instruction regarding the operation of the drilling equipment or relevant safety issues. It is also evident from our review of the record we have that on the date of the incident the employer was not required to provide safety equipment such as a harness or lanyard *unless* there was a danger of falling. The safe distance prescribed in the MSHA approved ground control plan in effect at the time of the accident was four foot from the edge of the highwall.[16] Accordingly, we affirm the lower court's grant of summary judgment in this case.

## IV. Conclusion

In light of the foregoing, the June 27, 2008, summary judgment order of the Circuit Court of Logan County is affirmed.

Affirmed.

Justice WORKMAN dissents and reserves the right to file a dissenting opinion.

Kay Kane, *Federal Practice and Procedure,* vol. 10A, § 2722 (Civil 3d ed., 1998) (in determining propriety of summary judgment "uncertified or otherwise inadmissible documents may be considered by the court if not challenged.").

WORKMAN, Justice, dissenting:

Few legal principles in West Virginia jurisprudence are as well-settled as the axiom that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Equally well-established is the requirement that this Court "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Painter v. Peavy,* 192 W.Va. 189, 192, 451 S.E.2d 755, 758 (1994). Nevertheless, the majority in this action has ignored these fundamental principles in affirming the circuit court's grant of summary judgment in favor of the defendant. After drawing all permissible inferences in the light most favorable to the plaintiffs, sufficient evidence exists to raise a genuine issue of material fact with regard to each element of the plaintiffs' deliberate intent claim. Therefore, I respectfully dissent.

The majority concludes that the assertions contained in the Kennedy affidavit are insufficient to establish a genuine issue of material fact as to whether Contractor Enterprises had "actual knowledge" of the specific unsafe working condition that led to the injuries in this case. In so finding, however, the majority fails to draw any inferences in favor of the plaintiffs. For example, in addressing the fact that the supervisor to whom Kennedy complained is not named in the affidavit, the majority states that, "even if an unnamed supervisor of Contractor Enterprise became aware of work being done dangerously close to the edge of the highwall, Mr. Kennedy's statement would only establish that some unidentified person was informed [of Mr. Kennedy's concerns]." Thus, the majority implies that the lack of identification of the supervisor undermines the significance of Mr. Kennedy's complaint. A permissible in-

---

**16.** The amendment to the ground control plan following the accident now requires the use of a safety harness or lanyard when persons are working six feet or less from the edge of the highwall.

ference that could be drawn from this statement, however, is that Mr. Kennedy specifically informed a company supervisor that equipment was being operated dangerously close to the edge of the highwall, thus indicating that the defendant had actual knowledge of the unsafe working condition.

Similarly, the majority fails to draw inferences in favor of the plaintiffs from Mr. Kennedy's sworn statement that, while employed by the defendant, he had personally witnessed highwall drilling machines placed so close to the edge of the highwall that the curtains of the machines could be seen from below. While, as the majority points out, Mr. Kennedy's affidavit does not indicate that he described this specific situation to his supervisor, the statement indicates that workers were routinely using highwall drilling machines unsafely by placing them much too close to the edge of the highwall. A court could reasonably infer that such repeated unsafe use would have been witnessed by supervisors, thereby putting the company on notice that such unsafe working conditions existed.

Moreover, the majority actually draws inferences in favor of the defendant, not the plaintiff, with respect to Mr. Kennedy's affidavit. Because Mr. Kennedy's affidavit describes his complaint to his supervisor as stating that "the company was working people too close to the highwall edges without any regard to safety," the majority infers that Kennedy failed to specifically inform the supervisor of the specific danger of *highwall drilling machines* being placed too close to the edge of the highwall. Thus, the majority concludes that no evidence exists that the Company had actual knowledge of such unsafe condition. This is certainly one inference that can be drawn from these facts, but it is not the inference most favorable to the plaintiffs, which this Court is required to draw by well-settled law.

As the majority points out in footnote thirteen, "actual knowledge" is the equivalent of the employer's "subjective realization" and "appreciation" of the existence of the specific unsafe working condition. This Court has previously held that an employer cannot be found to have "subjective realization" and

"appreciation" of an unsafe condition by evidence merely indicating that the employer "reasonably should have known" of the condition; rather the employer must have "actually possessed such knowledge." *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 641, 408 S.E.2d 385, 393 (1991). In the instant case, however, the plaintiffs presented evidence, in the form of Mr. Kennedy's affidavit, that the defendant was specifically informed only a few weeks before the accident that men were working dangerously close to the edge of the highwall. At the very least, this evidence is sufficient to raise a genuine issue of material fact as to whether the defendant "actually possessed" knowledge of the unsafe working condition. Moreover, if the defendant was, in fact, aware of the unsafe working condition but still directed Mr. Ramey to operate his drilling machine along the highwall without any additional safety instructions or training, then a genuine issue of material fact would also exist with regard to whether the defendant intentionally exposed Mr. Ramey to that condition.

To be clear, my position is not that the plaintiffs' evidence proves that Contractor Enterprises possessed actual knowledge of the dangerous condition or that it did intentionally expose Mr. Ramey to that condition. Indeed, other evidence, such as the ground control plan that included a drill pattern to keep the drill operator and drill at least four feet from the highwall's edge, clearly weighs in favor of Contractor Enterprises's position in this case. Rather, the evidence presented by the plaintiffs, viewed in light of the reasonable inferences that can be drawn in their favor, presents genuine issues of material fact that should be decided by a jury. As such, this case is inappropriate for disposition on summary judgment and, therefore, I dissent.