**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

September Term 2013

FILED

October 17, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0548

**DAVID McCOMAS,**
**Plaintiff Below, Petitioner**

v.

**ACF INDUSTRIES, LLC,**
**a Delaware Company,**
**Defendant Below, Respondent**

_____

Appeal from the Circuit Court of Cabell County
The Honorable F. Jane Hustead, Judge
Civil Action No. 09-C-534

**REVERSED AND REMANDED**

_____

Submitted: September 25, 2013
Filed: October 17, 2013

Shannon M. Bland, Esq.                    Jenna Perkins Wood, Esq.
Bland and Bland Attorneys At Law, L.C.     Justin M. Hershberger, Esq.
Charleston, West Virginia                  Rawle & Henderson, LLP
Counsel for the Petitioner                 Wheeling, West Virginia
                                           Counsel for the Respondent

JUSTICE KETCHUM delivered the opinion of the Court.

CHIEF JUSTICE BENJAMIN and JUSTICE LOUGHRY dissent and reserve the right to file a dissenting opinion.

**SYLLABUS BY THE COURT**

1. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty and Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

2. "To establish 'deliberate intention' in an action under *W.Va. Code*, § 23-4-2(c)(2)(ii) (1983) [currently, *W.Va. Code*, 23-4-2(d)(2)(ii) (2005)], a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements." Syl. pt. 2, *Helmick v. Potomac Edison Company*, 185 W.Va. 269, 406 S.E.2d 700, *cert. denied*, 502 U.S. 908 (1991).

3. "The violation of a statute, rule, regulation or standard is a proper foundation for the element of deliberate intent found at W.Va. Code § 23-4-2(c)(2)(ii)(C) (1994) (Repl. Vol. 1998), where such statute, rule, regulation or standard imposes a specifically identifiable duty upon an employer, as opposed to merely expressing a generalized goal, and where the statute, rule, regulation or standard asserted by the employee is capable of application to the specific type of work at issue." Syl. pt. 3, *Ryan v. Clonch Industries, Inc.*, 219 W.Va. 664, 639 S.E.2d 756 (2006).

4. When a safety statute, rule or regulation, or a commonly accepted and well-known

safety standard within the industry or business, imposes a specifically identifiable duty to inspect upon the employer, and the inspection would have revealed the specific unsafe working condition, the employer may be found to have had actual knowledge of the specific unsafe working condition within the meaning of this State's deliberate intent statute, *W.Va. Code*, 23-4-2(d)(2)(ii)(B) [2005].

**Ketchum, Justice**:

This deliberate intent action is before this Court upon the appeal of the plaintiff / petitioner David McComas ("McComas") from the order of the Circuit Court of Cabell County granting summary judgment in favor of the defendant / respondent ACF Industries, LLC ("ACF"). McComas, a welder employed by ACF, sustained severe burns from an arc blast emanating from a 480-volt electrical box. The blast occurred as McComas attempted to turn on the power at his work station for lighting and to operate an electric welding machine.

The controlling statute, in effect on the date of the accident, was *W.Va. Code*, 23-4-2(d)(2)(ii) [2005], which provided an exception to the immunity from common law tort liability granted to employers under the West Virginia Workers' Compensation Act. McComas offered evidence that ACF was required, under applicable safety standards within the industry, to routinely inspect its 480-volt electrical boxes to ensure that they were in proper working order. His evidence showed that the box resulting in the arc blast was not in proper working order. ACF was unable to show that the 480-volt box had ever been inspected following its installation in the 1950s or early 1960s.

Upon careful review, this Court concludes that the entry of summary judgment constituted reversible error. The circuit court erred in finding that the safety standards relied on by McComas were not specifically applicable to his work and working conditions. The circuit court also erred in finding no question of material fact concerning whether ACF intentionally exposed McComas to the unsafe 480-volt box.

Accordingly, the order of the Circuit Court of Cabell County granting summary judgment

1

in favor of ACF is reversed, and this action is remanded to the circuit court for proceedings consistent with this opinion.

## I. Factual Background

ACF, a Delaware corporation, operates an industrial plant in the City of Huntington, Cabell County, for the construction of railroad cars. McComas began working for ACF in 1995 and, following a 2001 layoff period, returned to ACF in February 2004. McComas was a welder at the time of his injury.

On June 22, 2007, McComas and Ronnie Lambert, also a welder, were directed by their foreman, Wayne Stillwell, to go to the ST-3 section of the ACF plant to begin building sides for railroad cars.[1] McComas and Lambert were joined by McComas's father, Vollie McComas ("Vollie"), a welding technician. The ST-3 section of the plant had not been in recent operation, and the electric power for that area had been shut off. Lambert testified in his deposition that the area was dark. Turning on the electric power was necessary for lighting the area and also necessary because the welding machines used to build the sides of railroad cars were electric welders.

The three employees first attempted to turn the power on by means of individual circuit breakers. When that attempt failed, McComas approached an adjoining 480-volt, fused, switch box. The box was enclosed, and the side-handle was down, in the "Off" position. When McComas raised

_____

[1] "ST" was an abbreviation for "straight track," and the area where the injury occurred was known as the steel shop.

2

the handle to the "On" position, an arc blast suddenly occurred that blew him backwards and to the floor. Although McComas was wearing a hard hat, safety glasses and gloves, he sustained severe burns to 25% of his body surface area, including his face, chest and abdomen.[2]

The 480-volt box was installed in the 1950s or early 1960s and had never been inspected by ACF. McComas subsequently testified in his deposition that, other than a statement of the voltage, the box had no sign or label warning of danger. The 480-volt box was significantly damaged by the blast. It was stored for over a year by ACF but was discarded before it could be examined by the experts in this litigation. However, a similar power box owned by ACF was used for comparison. Most of the testimony submitted to this Court attributes the arc blast to the wear and tear and disintegration of the insulation within the 480-volt box.[3]

## II. Procedural Background

On June 18, 2009, McComas instituted a statutory deliberate intent action in the Circuit Court of Cabell County against ACF. The controlling statute, in effect on the date of the accident, was *W.Va. Code*, 23-4-2(d)(2)(ii) [2005].[4] That statute provided that the requirements of a deliberate

---

[2] McComas did not receive an electric shock from the arc blast. Rather, the blast was thermal in nature, due to a sudden release of energy. McComas's injuries, therefore, resulted from extreme heat.

[3] Although ACF completed an Occupational Safety and Health Administration ("OSHA") Injury and Illness Incident Report regarding McComas's injuries from the arc blast, no investigation by OSHA was conducted.

[4] *See Kane v. Corning Glass Works*, 175 W.Va. 77, 78 n. 1, 331 S.E.2d 807, 808 n. 1 (1984) (An employee's deliberate intent action is governed by the statute in effect at the time of the employee's injury). In the present matter, although prior versions of *W.Va. Code*, 23-4-2, were cited during the proceedings below, the briefs filed in this Court correctly refer to the

intent action may be satisfied only if all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

In July 2011, ACF filed a motion for summary judgment. Following a hearing, the circuit court granted the motion in an order entered on March 22, 2012.

Conducting an analysis of the pleadings and the evidence in the context of subparagraphs (A) through (E) of the deliberate intent statute, the circuit court concluded that McComas (1) failed

---

statute as amended in 2005.

to show under subparagraph (C) that ACF violated a specifically applicable safety regulation or safety standard, and (2) failed to show a question of material fact under subparagraph (D), concerning the intentional exposure of an employee to a specific unsafe working condition.

First, in its analysis of subparagraph (C), the circuit court cited Electrical Equipment Maintenance Standard 70B of the American National Standards Institute / National Fire Protection Association ("ANSI / NFPA"). Addressing safe electrical practices, Standard 70B provides for the maintenance and periodic inspection of electrical equipment in the workplace. The circuit court determined that the 480-volt, fused, switch box that injured McComas was subject to the inspection requirements of Standard 70B. Concluding that the Standard 70B inspection requirements were mandatory, the circuit court stated that ACF failed to comply with the requirements and that, if inspections had been conducted, ACF might have identified the problem with the box. However, the circuit court also concluded that, while Standard 70B generally required electrical safety in the workplace, Standard 70B was not a standard specifically applicable to the particular work and working conditions pertaining to McComas. Thus, the circuit court concluded that McComas's deliberate intent action failed under subparagraph (C).

Second, with regard to subparagraph (D), concerning the intentional exposure of an employee to a specific unsafe working condition, the circuit court emphasized that an inadvertent or negligent exposure to the unsafe condition would not be sufficient to sustain McComas's

5

deliberate intent action.[5]  Finding that there were no facts or inferences showing that ACF intentionally exposed McComas to a specific unsafe working condition, the circuit court concluded that the action failed under subparagraph (D).

Upon entry of summary judgment for ACF, this appeal followed.

### III. Standards of Review

Pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure*, summary judgment is proper where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  As a result of that plain language, this Court's standards of review concerning summary judgment have become well settled.  Syllabus point 3 of *Aetna Casualty and Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), holds:  "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  *Accord* syl. pt. 1, *Coleman Estate v. R.M. Logging, Inc.*, 222 W.Va. 357, 664 S.E.2d 698 (2008).

Moreover, this Court has observed that, in reviewing an order granting a motion for summary judgment, any permissible inferences from the underlying facts must be drawn in the light most favorable to the party opposing the motion.  *See Mueller v. American Electric Power Energy*

---

[5]  In granting summary judgment, the circuit court indicated that, although McComas might have been able to prove gross negligence on the part of ACF, that type of conduct by an employer is not actionable under the deliberate intent statute.

*Services*, 214 W.Va. 390, 393, 589 S.E.2d 532, 535 (2003).  Nevertheless, syllabus point 3 of

*Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), holds:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

*Accord* syl. pt. 4, *Reed v. Orme*, 221 W.Va. 337, 655 S.E.2d 83 (2007); syl. pt. 1, *Short v.*

*Appalachian OH-9, Inc*., 203 W.Va. 246, 507 S.E.2d 124 (1998).

In the context of a deliberate intent action filed under *W.Va. Code*, 23-4-2 [2005], the

circumstances warranting the dismissal of an action on summary judgment have been addressed by

the West Virginia Legislature.  As *W.Va. Code*, 23-4-2(d)(2)(iii)(B) [2005], states, in part:

> Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist[.]

Consistent with that statutory provision is syllabus point 2 of *Helmick v. Potomac Edison*

*Company*, 185 W.Va. 269, 406 S.E.2d 700, *cert. denied*, 502 U.S. 908 (1991), which holds:  "To

establish 'deliberate intention' in an action under *W.Va. Code*, § 23-4-2(c)(2)(ii) (1983) [currently,

*W.Va. Code*, 23-4-2(d)(2)(ii) (2005)], a plaintiff or cross-claimant must offer evidence to prove each

7

of the five specific statutory requirements." *Accord* syl. pt. 5, *Marcus v. Holley*, 217 W.Va. 508, 618 S.E.2d 517 (2005).

Finally, in syllabus point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that a circuit court's entry of summary judgment "is reviewed *de novo*." *Accord Coleman Estate*, *supra*, 222 W.Va. at 363, 664 S.E.2d at 704.

## IV. Discussion

In granting ACF's motion for summary judgment, the circuit court focused on subparagraphs (C) and (D) of *W.Va. Code*, 23-4-2(d)(2)(ii) [2005]. However, much of the evidence submitted to this Court by the parties extends to all five subparagraphs of the statute. A discussion of each of the paragraphs is therefore warranted.

### Subparagraph (A)

To maintain a deliberate intent action, subparagraph (A) requires proof by the employee of a specific unsafe working condition which presented a high degree of risk and a strong probability of serious injury or death.

In the present matter, deposition testimony indicated that the 480-volt box was installed in the 1950s or early 1960s and had never been inspected by ACF.[6] After the accident, ACF industrial

---

[6] In his deposition, ACF plant manager Dennis Nibert indicated that he was unaware of any records showing maintenance work on the box in question. Moreover, ACF's expert witness James Warren testified by deposition:

electrician Danny Scarberry removed the box. In his deposition, Scarberry indicated that it was obvious that the arc blast was caused by a failure of the insulation within the box. In the order granting summary judgment, the circuit court stated: "The uninspected switch box at ACF Industries that was involved in the arc blast was a specific unsafe working condition that presented a high degree of risk and a strong probability of serious injury or death." This Court agrees. On the day of the accident, the 480-volt box located in the ST-3 work area to which McComas was assigned was unsafe and capable of causing the severe burns McComas sustained that day. Thus, no basis for ACF's motion for summary judgment can be found under subparagraph (A) of the deliberate intent statute.

**Subparagraph (C)**

We address the next two subparagraphs of *W.Va. Code*, 23-4-2(d)(2)(ii) [2005], in reverse order. Subparagraph (C) requires proof by the employee that the specific unsafe working condition was a violation of a safety regulation or safety standard *specifically* applicable to the particular work and working condition involved (as contrasted with a regulation or standard *generally* requiring safety in the workplace). Addressing the 1994 version of the statute, which included language substantially similar to subparagraph (C), this Court held in syllabus point 3 of *Ryan v. Clonch Industries, Inc.*, 219 W.Va. 664, 639 S.E.2d 756 (2006):

> The violation of a statute, rule, regulation or standard is a proper foundation

---

Q. Are you aware of any written maintenance or inspection records that exist at ACF as they relate to the subject box involved in this accident?

A. I'm not aware of any.

9

for the element of deliberate intent found at W.Va. Code § 23-4-2(c)(2)(ii)(C) (1994) (Repl. Vol. 1998), where such statute, rule, regulation or standard imposes a specifically identifiable duty upon an employer, as opposed to merely expressing a generalized goal, and where the statute, rule, regulation or standard asserted by the employee is capable of application to the specific type of work at issue.

In *Clonch*, a lumberyard employee was rendered blind in one eye as the result of a work-related accident. As required by subparagraph (C) of the deliberate intent statute, the employee cited an OSHA regulation which required the employer to conduct hazard evaluations and directed the use of personal protective equipment where hazards were identified. Conceding failure to comply with the OSHA regulation, the employer asserted that the regulation was merely a general provision for safety in the workplace and, therefore, could not be cited as a specifically applicable rule violation for purposes of the deliberate intent statute. In *Clonch*, this Court rejected that assertion and, reversing the circuit court's entry of summary judgment for the employer, concluded that the OSHA regulation imposed a "specific mandatory duty" on the employer to assess the workplace for the purpose of identifying hazards and to thereby determine the need for protective equipment. 219 W.Va. at 671, 639 S.E.2d at 763. In reaching that conclusion, this Court indicated in *Clonch* that the regulation's imposition of an "affirmative duty" on the employer was an important factor in distinguishing the regulation from a general safety requirement. *Id.*

Here, the circuit court determined that the 480-volt, fused, switch box that injured McComas was subject to the inspection requirements of Standard 70B. Concluding that the Standard 70B inspection requirements were mandatory, the circuit court stated that ACF failed to comply with the requirements and that, if inspections had been conducted, ACF might have identified the problem with the box. Pursuant to Standard 70B, fused, switch boxes, while energized, were to be inspected

10

for overheating every three to six months and, when not energized, were subject to cleaning, inspection and maintenance every three to six years.[7]

The circuit court, nevertheless, concluded that Standard 70B was a general, electrical safety provision, rather than a standard specifically applicable to McComas's particular work and working conditions. That conclusion, however, is undermined by the circuit court's further statement indicating that, if inspections required by Standard 70B had been conducted, ACF might have identified the specific problem, *i.e.*, worn out insulation within the 480-volt box resulting in the arc blast. In any event, the evidence favorable to McComas establishes that the box was installed in the 1950s or early 1960s and, contrary to Standard 70B, had *never* been inspected by ACF. Further evidence reveals that ACF had no inspection or maintenance policy concerning *any* of the electrical boxes at its Huntington facility, and work on the electrical boxes took place only when a specific problem arose.[8]

---

[7] In his July 2011 affidavit, McComas's expert Roger Bybee stated: "ANSI / NFPA 70B was specifically applicable to the particular work being performed at ACF's Huntington, West Virginia facility. NFPA 70B required the electrical boxes to be inspected every 3 to 6 months energized and every 3 to 6 years de-energized." Similarly, ACF's expert James Warren indicated in his deposition that the three to six month, and the three to six year, inspection requirements were applicable in this action.

[8] During the hearing on the motion for summary judgment, ACF acknowledged that there was no schedule at its Huntington facility with regard to the three to six month and the three to six year inspections described in Standard 70B and that maintenance was performed on the electrical boxes only when a problem was perceived. Plant manager Dennis Nibert, who had worked at ACF for 37 years, testified during his deposition that he was not aware of any preventive maintenance being done on the electrical boxes at the facility. Similarly, ACF industrial electrician Danny Scarberry testified, during his deposition, that maintenance on the electrical boxes was not performed at the plant on a regular basis.

ACF's expert witness James Warren testified by deposition:

11

The summary judgment order in this action stated: "ANSI / NFPA 70-B imposed *a specific identifiable duty* on ACF Industries to inspect the switch box involved in this incident pursuant to electrical safety in the workplace." (emphasis added) That statement, supported by the evidence herein, is comparable to syllabus point 3 of *Clonch* and the "affirmative duty" imposed on the employer stated in the *Clonch* opinion. Without doubt, Standard 70B was a commonly accepted and well-known safety standard, as required under subparagraph (C) of the deliberate intent statute.

Subparagraph (C) also requires proof that the safety regulation or safety standard is specifically applicable to the particular work and working condition involved in the action. In addition to Standard 70B, this Court has before it Standard 70E, addressing electrical safety in the workplace, which provides in Article 210 § 210.4: "Insulation integrity shall be maintained to support the voltage impressed." ACF's expert James Warren indicated in his deposition that Standard 70E is the "backbone" of comparable OSHA safety provisions. With § 210.4 in mind, the numerous depositions filed herein reveal that, although ACF contends that it told its production employees to call an electrician to turn on the 480-volt boxes, the employees, including the welders, were commonly permitted to turn on the boxes to maintain production at the Huntington plant.[9] The

> Q. Based on what you reviewed and your site inspection and so forth, everything you've done in this case, can you tell me whether or not there was any inspection program of the electrical boxes at ACF?
>
> A. I am not aware of any.

[9] The depositions were conflicting on the question of whether the employees were told to call an electrician. ACF's expert James Warren testified that, though "rarely followed," the procedure at the ACF facility was to have the electricians turn on the power. However, welder Ronnie Lambert testified:

12

working conditions at ACF's Huntington facility were, thus, described. Plant manager Nibert, as well as welders McComas, Ronnie Lambert, Dennis Deal, Larry Brumfield and welding technician Vollie, testified by deposition that electric boxes at the plant were turned on and off by non-electrician employees numerous if not hundreds of times.

Accordingly, no basis for ACF's motion for summary judgment can be found under subparagraph (C) of the deliberate intent statute.

**Subparagraph (B)**

Subparagraph (B) of the statute requires that the employee prove that the employer, prior to the injury, had "actual knowledge" of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition.

The requirement of actual knowledge by the employer in *W.Va. Code*, 23-4-2(d)(2)(ii) [2005], is, therefore, different from the prior version of the statute, before this Court in *Clonch*, which required the employer to have had a "subjective realization and an appreciation" of the

---

Q. Okay. Were you ever directed by ACF to call an electrician instead of turning on the 480-volt boxes?

A. No, I don't think so.

Similarly, McComas testified that he had never been required or advised to call an electrician to turn on a power box. Finally, ACF safety administrator Mike McGuffin testified that, although "the first thing to do" would be to call an electrician, employees were restricted from turning on and off 600-amp boxes, but not 480-volt boxes.

13

condition and the risk and probability of injury. The *Clonch* opinion is, nevertheless, helpful. In *Clonch*, this Court concluded that the statutory requirement involved a question of fact where the evidence demonstrated that the employer failed to comply with a mandatory duty to perform a hazard evaluation imposed on it by OSHA. Had the duty been performed, the workplace hazard may have been readily identified. The employer was, therefore, precluded from denying that it possessed a subjective realization of the hazard. Reversing the entry of summary judgment for the employer, Chief Justice Davis stated in the *Clonch* opinion that

> we simply cannot condone any employer's attempt to avoid an otherwise viable deliberate intent action by conducting itself "like the proverbial ostrich who sticks his head in the sand to avoid seeing the obvious[.]"

(citation omitted) 219 W.Va. at 674, 639 S.E.2d at 766.

The current version of the deliberate intent statute, requiring actual knowledge by the employer, was considered by this Court in *Ramey v. Contractor Enterprises, Inc.*, 225 W.Va. 424, 693 S.E.2d 789 (2010). In that action, the employee, a drill operator, sustained severe injuries when he fell 80 feet from a highwall at a mine site. The employee's deliberate intent action was dismissed on summary judgment, in part, because the circuit court determined that there was insufficient evidence to show that the employer had actual knowledge of an unsafe working condition regarding its highwall drilling operations. Affirming summary judgment for the employer, Contractor Enterprises, this Court stated:

> Contractor Enterprise[s] supplied the lower court with inspection documents . . . representing that pre-shift and on-shift worksite inspections had been conducted the day of and prior to the accident involving Mr. Ramey. The employer thus

14

demonstrated it had complied with the federally required inspection schedule as MSHA regulations mandate a minimum of daily inspection of mine sites for hazardous conditions. Hence we concur with the trial court's conclusion that actual knowledge could not be imputed to the employer pursuant to our holding in *Ryan* [*v. Clonch*][10] because there was no failure on the part of the employer to conduct mandatory inspections.

225 W.Va. at 431, 693 S.E.2d at 796.

Under subparagraph (B), even if an employer did not have a clear realization of a specific unsafe working condition and of its high degree and strong probability of serious injury or death, the employer may still be treated as if it had actual knowledge of the condition. If a safety statute, rule, regulation or commonly accepted and well-known safety standard imposes a duty on the employer to inspect the workplace, and the inspection would have revealed the unsafe condition, then a jury may find that the employer had actual knowledge of the specific unsafe condition and its risks. As we interpret subparagraph (B), the Legislature did not intend to allow employers to shirk responsibilities imposed by specific statutes, rules, regulations or standards by turning a blind eye to workplace hazards. Willful ignorance of a specific unsafe working condition is no defense

---

[10] *Ramey*, a *per curiam* opinion, observes that this Court has interpreted the terms "subjective realization" and "appreciation" to mean "actual knowledge." 225 W.Va. at 429 n. 13, 693 S.E.2d at 794 n. 13. This Court, considering a prior version of the deliberate intent statute, indicated in syllabus point 3 of *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991), that the "subjective realization" and "appreciation" requirements of the statute are

> not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer *actually possessed such knowledge*.

(emphasis added).

15

under subparagraph (B) of the deliberate intent statute.

Thus, in accordance with *Clonch* and *Ramey*, we hold that when a safety statute, rule or regulation, or a commonly accepted and well-known safety standard within the industry or business, imposes a specifically identifiable duty to inspect upon the employer, and the inspection would have revealed the specific unsafe working condition, the employer may be found to have had actual knowledge of the specific unsafe working condition within the meaning of this State's deliberate intent statute, *W.Va. Code*, 23-4-2(d)(2)(ii)(B) [2005].

Viewing the facts and inferences in favor of McComas, industrial electrician Danny Scarberry, who removed the 480-volt box after the accident, testified that it was "obvious" that the arc blast was caused by a failure of the insulation within the box. The box was installed in the 1950s or early 1960s and had never been inspected by ACF. Other than making repairs when a problem arose, ACF had no inspection or maintenance policy concerning any of the electrical boxes at its Huntington facility. Moreover, some employees denied being instructed to call an electrician to turn on a power box. *See* n. 9, *supra*. According to McComas, other than a statement of the voltage, the box had no sign or label warning of danger.

The circuit court determined that the 480-volt box that injured McComas was subject to the inspection requirements of Standard 70B. McComas's expert, Roger Bybee, and ACF's expert, James Warren, were in agreement that the provisions of Standard 70B were applicable. Pursuant to Standard 70B, fused, switch boxes, while energized, were to be inspected for overheating every

16

three to six months and, when not energized, were subject to cleaning, inspection and maintenance every three to six years. Moreover, Standard 70E, in Article 210 § 210.4, provided that "[i]nsulation integrity shall be maintained to support the voltage impressed."

The ANSI / NFPA standards were commonly accepted and well-known within the industry, and the deposition testimony reveals that ACF had, at least, some awareness of those standards. The circuit court concluded that ACF failed to comply with the requirement of 70B and that, if inspections had been conducted, ACF might have identified the problem with the box that injured McComas. The affidavit of McComas's expert, Roger Bybee, states: "Had ACF performed the required inspections and maintenance of the unsafe box as required by all applicable standard[s] of good practice it would have shown the dangerous condition of the box."

Consistent with *Clonch*, the summary judgment order in this action stated: "ANSI / NFPA 70-B imposed a specific identifiable duty on ACF Industries to inspect the switch box involved in this incident pursuant to electrical safety in the workplace." ACF's conscious indifference to that duty in the circumstances herein may not serve to avoid the actual knowledge requirement under subparagraph (B) of *W. Va. Code*, 23-4-2(d)(2)(ii) [2005], and no justification for summary judgment is present on that basis.

**Subparagraphs (D) and (E)**

Subparagraph (E) of the deliberate intent statute requires the employee to prove serious injury as a result of the specific unsafe working condition. There is no dispute concerning that requirement in view of the severe injuries McComas received from the arc blast. Subparagraph (D),

17

however, requires proof that the employer intentionally exposed the employee to the specific unsafe working condition. The circuit court concluded that there were no facts or inferences showing that ACF intentionally exposed McComas to a specific unsafe working condition.

On the day of the accident, McComas and Ronnie Lambert, joined by Vollie, were directed by their foreman, Wayne Stillwell, to go to the ST-3 section of the ACF plant to begin building sides for railroad cars. Lambert testified that the area was dark. Turning on the electric power was necessary to light the area and also necessary because the welding machines used to build the sides were electric welders.[11] When the individual circuit breakers failed to activate the power, McComas raised the handle on the adjoining 480-volt box resulting in the arc blast that severely injured him. The evidence discloses that ACF had, at least, some awareness of the ANSI / NFPA standards. The evidence further discloses that ACF had never done preventative maintenance on any of its electric boxes on a regular basis and had no schedule to perform inspections. ACF was aware that its production employees routinely turned the power boxes on and off in the course of their work.

---

[11] During his deposition, plant manager Dennis Nibert testified:

> Q. Okay, all right. But you agree with me that they would need electrical power to perform the task of building sides?
>
> A. Absolutely.
>
> Q. Okay. And, if they were sent to do that and it were not on, they were authorized to turn it on, it was okay?
>
> A. Absolutely.
>
> Q. And in fact they would have to turn it on to do that if it was off?
>
> A. Somebody had to turn it on.

Moreover, the evidence remains unresolved whether ACF ever told, or had a policy directing, its employees to call an electrician at the facility to turn on the 480-volt boxes. Viewing the evidence in favor of McComas, the arc blast was caused by deteriorated insulation within a 480-volt power box that had never been inspected since its installation at the plant in the 1950s or early 1960s. Thus, ACF's assertion that the accident could not have been anticipated is notably unconvincing.

This Court is of the opinion that summary judgment for ACF should not be permitted to stand with respect to subparagraph (D) of the deliberate intent statute.

### V. Conclusion

For the reasons stated, the March 22, 2010, order of the Circuit Court of Cabell County granting summary judgment in favor of ACF is reversed, and this action is remanded to the circuit court for proceedings consistent with this opinion.

Reversed and Remanded.

19